VINEYARD v. MILLER LAND CO. et al. (No. 7477.)

(Court of Civil Appeals of Texas. Galveston. Feb. 13, 1919. Rehearing Denied March 13, 1919.)

1. PARTNERSHIP &=55—PROOF OF RELATION.

In action to foreclose vendor's lien notes, evidence held insufficient to sustain finding that plaintiff was a partner with land company.

2. CORPORATIONS &=379—PARTNERSHIP WITH INDIVIDUAL.

No valid partnership agreement can be made between a corporation and an individual, and it is immaterial that individual is owner of most of stock of corporation.

3. JUDGMENT &=256(1)—FINDINGS OF FACT —VERDICT.

Whatever may be state of evidence, a judge cannot base a judgment upon a finding of fact contrary to verdict of jury upon the issue.

4. VENDOR AND PURCHASER &=267—VENDOR'S LIEN—DISCHARGE.

Where a vendor of land agreed to release any part of land sold by vendee upon payment of $25 per acre on land to be released, vendee could not, after making a general payment on notes without asking that such payment be applied to release of some designated tract, thereafter claim that it should be so applied.

5. VENDOR AND PURCHASER &=267—VENDOR'S LIEN—DISCHARGE.

Where vendor agreed to discharge his lien upon any designated tract of land upon payment of $25 per acre out of proceeds of such particular tract, equity would protect purchaser from vendee of particular tract of land who had furnished money paid to vendor against any lien of vendor, if said payment amounted to $25 per acre, but a purchaser who had not paid as much as $25 per acre had no right to demand that previous payments made by land company on notes in excess of $25 per acre for other lands sold should be applied to discharge of lien on his land.

Appeal from District Court, Wharton County; Samuel J. Styles, Judge.

Suit by B. L. Vineyard against the Miller Land Company and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Geo. P. Willis, of El Campo, and Kelley & Hawes, of Wharton, for appellant.

Hall & Barclay, of Wharton, W. S. Strickland, of Eagle Lake, and A. J. Wirtz, of Seguin, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellees to recover the amount due upon three promissory notes for the sum of $7,048.33 each, executed by the Miller Land Company on October 11, 1910, in favor of the Fidelity Immigration Company, and payable respectively in one, two, and three years after date, with interest from date at the rate of 7 per cent. per annum, and to foreclose a vendor's lien upon a tract of 1,357.25 acres of land in Wharton county, described in plaintiff's petition, and conveyed by the Fidelity Immigration Company to the Miller Land Company, said notes having been executed in part payment of the purchase money for said land, and a vendor's lien having been expressly retained in said deed to secure the payment of the notes. The petition alleges that the notes were for a valuable consideration transferred and indorsed to plaintiff by the Fidelity Immigration Company, and plaintiff was the legal holder and owner thereof. The petition further alleged:

"That defendant had made certain payments on said notes as stated in said petition, leaving a balance due of principal on note No. 1 on May 15, 1913, of $1,557.72; on note No. 2, on October 11, 1912, of $6,048.33; and on note No. 3, on said date, of $6,548.

"The said Miller Land Company in October, 1910, had said tracts of land, which lay in a body, surveyed and subdivided into lots numbered, consecutively, from one to 98, inclusive,

and designated on the plat which is of record in the deed records of Wharton county, Tex., in volume 28, pages 413 and 414.

"That on February 13, 1913, defendant the Miller Land Company, acting by its president and trustee, C. B. Miller, and its secretary and trustee, O. L. Miller, conveyed to the defendant E. S. Miller 872.25 acres of said land, the deed being recorded in deed records of Wharton county, Texas, in volume 35, pages 62 and 63, and that as part of the consideration for said land the said Miller assumed the payment of said three notes.

"That on the same date the defendant E. S. Miller, by deed of said date, recorded in said deed records, volume 35, pages 63 and 64, conveyed said 872.25 acres of land to said C. B. Miller and O. L. Miller, and as part consideration therefor the said C. B. and O. L. Miller agreed to and did assume the payment of the said three notes sued on.

"That each of the other defendants, to wit, T. J. Brentlinger, Thomas Baskerville, W. H. Larsen, G. A. Proffer, Thomas Chase, and Bernard Crow, had bought from the Miller Land Company, or from C. B. Miller and O. L. Miller, certain lots of said Miller Land Company's subdivision, being a part of the land on which plaintiff's lien existed; that none of said lands so purchased had been released by plaintiff, and that plaintiff's lien still existed thereon.

"That the First National Bank of Eagle Lake held one or more notes secured by vendor's lien on some portion of said lands, which were given by the vendees to the said Miller Land Company, or to C. B. Miller and O. L. Miller, for part of the purchase money of said lands, but that plaintiff was not apprised and could not state the nature and amount of said notes.

"Plaintiff prayed for citation to all defendants, and that on final hearing he have judgment against defendants the Miller Land Company, and against E. S. Miller, C. B. Miller, and O. L. Miller, jointly and severally, for the full amount of the balance due on said notes, with interest and attorney's fees and cost of suit, and for foreclosure of its vendor's lien on all of the above lands described in the petition against all of the defendants, and for general and special relief, both at law and equity."

C. B. Miller, E. S. Miller, Thomas Chase, G. A. Proffer, T. J. Brentlinger, and Thomas Baskerville were nonresidents of the state, and were served with personal notice, as provided by the statute. None of these last-named defendants, except T. J. Brentlinger, answered plaintiff's suit, and judgment by default was rendered against them, and against the Fidelity Immigration Company, no answer having been made by it.

The defendants W. H. Larsen, T. J. Brentlinger, and the First National Bank of Eagle Lake filed separate answers. The defendant O. L. Miller, for himself and as trustee for the Miller Land Company, which had lost its corporate existence, filed an answer adopting the pleadings of the First National Bank of Eagle Lake.

The defenses set up by the several defendants who answered were briefly and substantially as follows:

The defendant W. H. Larsen alleged that the Fidelity Immigration Company, on July 1, 1910, entered into a written contract with O. L. Miller and C. B. Miller, whereby the said Millers agreed to purchase the lands described in plaintiff's petition, and that in said contract there was a clause providing that, on payment by the vendee of $25 per acre on all tracts of ten acres and up, the said Fidelity Immigration Company would release said tracts.

That the Miller Land Company was then organized for the purpose of carrying out said contract and selling said land to other purchasers, and the deed was executed to it on October 11, 1910.

That the plaintiff, Vineyard, was the principal owner and stockholder of the Fidelity Immigration Company, and was president and director thereof; that he was also a stockholder and director in the Miller Land Company, and the Miller Land Company was also the agent and partner of plaintiff and the Fidelity Immigration Company, and that plaintiff and said Fidelity Immigration Company, and W. T. Chester, secretary of said company, were fully conversant with all the affairs of the Miller Land Company, and participated in all the sales made by it, the two companies having the same office, office force, fixtures, etc.

That the defendant W. H. Larsen purchased from said Miller Land Company about the 1st of February, 1913, certain lots out of the Miller Land Company's subdivision of this tract, aggregating 180 acres, for which he gave in exchange a tract of land of the value of $4,800, and executed to said Miller Land Company his promissory note for $1,500, secured by vendor's lien on said 180 acres.

That before the consummation of said deal the said Larsen wrote to the plaintiff informing him of the contemplated purchase, and inquiring what arrangements had been made regarding a release of plaintiff's vendor's lien, and received a letter written by plaintiff as president of the Fidelity Immigration Company stating that, on completion of payment by the purchaser on said lands, said Fidelity Immigration Company would release any portion of said lands so purchased and fully paid for, and that relying on such letter he had closed the deal and executed said note, and had been and then was willing to pay said note to whomsover it was due, on release of plaintiff's lien of the Miller Land Company. He also alleged that plaintiff had been appointed by the stockholders and directors of the defunct corporation, the Miller Land Company, as one of the trustees to take possession of its property, etc.

The First National Bank of Eagle Lake alleged that the defendants G. C. Proffer, Thomas Chase, and Thomas Baskerville had also purchased at different dates certain lots in said Miller Land Company subdivision with the knowledge and consent of plaintiff and the Fidelity Immigration Company, who assisted in making said sales, and had given certain notes, described in its pleadings, for part of the purchase money of said lands.

That these purchasers knew nothing of plaintiff's lien, and were not advised by plaintiff or said Fidelity Immigration Company of its existence.

That the plaintiff, acting in his dual capacity as chief owner, principal stockholder, controlling

director, and general manager of the Fidelity Immigration Company, and stockholder, director, and general manager of Miller Land Company, and as partner of O. L. Miller, who was acting also for the Miller Land Company, recommended the Miller Land Company and O. L. Miller and C. B. Miller to said defendant as worthy of credit, and procured said defendant to extend credit to said parties; that plaintiff knew that said parties had no collateral for credit except the certificates of stock of said company and the notes of the parties above mentioned, and that said parties would offer such certificates and notes to said defendant as collateral for credit; that plaintiff stated at such time that the real estate notes the said Miller would offer the defendant would be good and sufficient collateral for such credit, and that it could depend thereon.

That the Miller Land Company, O. L. Miller, and C. B. Miller and said bank thought, and were led to believe, and did believe, that plaintiff's lien had been fully paid off, in that more than $25 per acre had been paid to plaintiff on said lands so sold, and that the plaintiff knew of such belief, and remained silent, and allowed and permitted said notes to be put up with said bank as collateral, and failed to assert, disclose, or claim any lien, and that said defendant bank had extended such credit and taken said notes, including the note of W. H. Larsen for $1,500.

That plaintiff was a partner with O. L. Miller and the Miller Land Company, and received part of the money advanced by said bank, the remainder of the money being used by the said Millers and the Miller Land Company in selling its lands and other lands of plaintiff; that said notes were indorsed by the Miller Land Company and guaranteed to said defendant, with the knowledge and consent of plaintiff.

The said bank also pleaded that on the 14th day of February, 1913, at a called meeting of the stockholders of the Miller Land Company, a resolution was passed dissolving said corporation, and appointing the plaintiff and O. L. Miller trustees of the creditors and stockholders of said corporation, with power to settle its affairs, collect the outstanding debts, and pay the indebtedness, and divide the balance among the stockholders.

That in pursuance of this appointment said notes and remainder of said lands came into possession of plaintiff and his cotrustees, and that to carry out the terms of their trust, and to obtain money for the purpose of disposing of said lands and of paying its indebtedness to plaintiff, the plaintiff and his cotrustees deposited said notes with defendant, and indorsed and transferred them to defendant, and that plaintiff remained silent as to his lien; that plaintiff instructed and permitted the indorsement of said notes in the name of the Miller Land Company, which was at that time a defunct corporation, of which plaintiff was trustee, and is now estopped from denying that said notes constituted a first lien on said lands.

The defendant Brentlinger alleged that on March 11, 1913, he purchased certain lots in the Miller Land Company's subdivision from the Miller Land Company, aggregating 160 acres, for which he paid the sum of $6,400 in cash, and that a part of this cash was received by plaintiff; that the plaintiff was fully aware of the terms of said sale, and that it was made with his knowledge, ratification, and consent.

That he entered into possession of said lands, and made valuable improvements thereon, of the value of $2,000, with the knowledge and consent of plaintiff, and that plaintiff remained silent, and allowed all this to be done, and did not disclose his lien until on or about June 27, 1914, when he wrote defendant a letter, which was copied in said pleading.

This defendant also alleged that plaintiff was president and director of the Fidelity Immigration Company, and was also a stockholder, director, and officer of the Miller Land Company; that the two companies were formed for the purpose of selling plaintiff's land and dividing the profits with plaintiff; that they occupied the same office; that plaintiff and said Fidelity Immigration Company knew of and aided and assisted the Miller Land Company in making said sale and in making the conveyance thereof by general warranty deed; that they remained silent as to any claim or lien on said land, and were thereby estopped from asserting said lien.

Said defendant also pleaded that there was an oral agreement between plaintiff and the Miller Land Company whereby, on payment of $20 per acre on all tracts of ten acres and up, plaintiff would release the said lands; that sufficient had been paid on said notes to release the tracts purchased by said Brentlinger, Larsen, Proffer, Chase, and Baskerville.

The plaintiff, by supplemental pleadings, denied generally and specifically all the material defensive allegations of defendant's pleadings, except the execution of the contract containing the release clause, which he alleged he had always stood ready and willing to comply with. He denied that he was ever a stockholder, director, or officer in the Miller Land Company; denied that he was ever a partner of the Miller Land Company, or that it was ever his agent, or that plaintiff was ever a partner of the defendant O. L. Miller, or the Miller Land Company, or that he was ever a trustee of the Miller Land Company; that if a resolution was passed at a called meeting of the board of directors, and the stockholders of the Miller Land Company of February 14, 1913, whereby he was appointed trustee of said company as alleged in said answers, that it was null and void, that plaintiff was not present and was never notified of such appointment, and never acted in said capacity in any way, and never knew of said appointment until the filing of said pleadings by defendants; that if such a resolution was passed, appointing him one of the trustees of said company, it was done without his knowledge and consent, and was done for the purpose of perpetrating a fraud upon him, in attempting to identify him with the affairs of said company; that he had reason to believe, and did believe, that if any such resolution appeared in the minutes of said company, it has been placed there since the institution of this suit for

the fraudulent purpose of binding the plaintiff by the acts of said company.

The foregoing sufficient statement of the substance of the pleadings is copied from appellant's brief.

There was a jury trial in the court below of some of the issues of fact raised by the pleadings and evidence. These issues and the findings of the jury will be hereinafter stated. Upon return of the verdict the trial court rendered a judgment and decree adjudging, among other things, that plaintiff's lien had been fully satisfied and discharged as to the lands claimed by the defendants W. H. Larsen and T. J. Brentlinger, and that the notes of the several purchasers from the Miller Land Company held by the First National Bank of Eagle Lake were secured by a first lien upon the several tracts of land described in the answer of said defendant. This portion of the judgment is not supported by any findings of the jury but, as to the defendants Larsen and Brentlinger, is based upon a finding by the trial judge that in the sale of these lands by O. L. Miller and the Miller Land Company, and the execution of conveyances therefor to the several purchasers, defendants herein, plaintiff was a copartner with said O. L. Miller and the Miller Land Company, and any and all payments by said purchasers to O. L. Miller or the Miller Land Company should be held to be payment to plaintiff, and the amounts so paid O. L. Miller and the Miller Land Company by said defendants being as much as $25 per acre for the land purchased by said defendants, under the terms of the contract of sale between plaintiff and the Miller Land Company, plaintiff's lien on the land sold by the Miller Land Company to said defendants was satisfied and discharged.

As to the notes of the purchasers Proffer, Chase, and Baskerville, now held by the First National Bank of Eagle Lake, the trial court further found that O. L. Miller and the Miller Land Company had paid to plaintiff the sum of $25 per acre for all of the land sold by them to said Proffer, Chase, and Baskerville, and by reason of such payments plaintiff's lien had been satisfied and discharged, and the lien reserved by the Miller Land Company to secure the notes of said purchasers, now held by the First National Bank of Eagle Lake, was a first lien upon said land.

Under an appropriate assignment of error appellant complains of each of these findings on the ground that they are not supported by any evidence, and that the second finding is in direct conflict with the finding of the jury upon one of the issues submitted to them.

Upon these issues presented by these assignments the record discloses the following facts: The Fidelity Immigration Company, a private corporation, of which plaintiff was the president and principal stockholder, held the title as sales agent for plaintiff of the 1,357¼ acres of land described in plaintiff's petition, and on July 1, 1910, entered into a contract with O. L. and C. B. Miller by the terms of which the company agreed to sell the land to the Millers for a consideration of $20 per acre, aggregating the sum of $27,145. Of this amount $6,000 was to be paid in cash, and the balance in three equal annual payments, with interest at the rate of 7 per cent. per annum. This contract contained the following provision:

"It being further understood and agreed that party of the first part (Fidelity Immigration Company) will release any tract from ten (10) acres up, on payment by the parties of the second part (Millers) to party of the first part of twenty-five ($25.00) dollars per acre, said payment to apply as part payment on the next following note becoming due. It is further understood that this release clause is to be embodied in the deed from the party of the first part to parties of the second part."

At the time this contract was entered into it was understood by all the parties to the contract that the Millers would organize a corporation to take over the land, and that the land would be conveyed to the corporation for a consideration of $25 per acre, the $5 additional consideration to be paid in stock of the proposed corporation which would be issued to the Millers as profits.

It was further agreed that the Fidelity Immigration Company would take $2,000 of said stock, and give credit for that amount on the vendor's lien notes to be executed by the proposed corporation for the deferred payments of the purchase money of the land. In accordance with this agreement, the Miller Land Company was organized and chartered, and on November 11, 1910, the Fidelity Immigration Company conveyed to it the land contracted to be sold the Millers. This deed of conveyance recites a cash consideration of $12,786.25, in order to cover the $5 per acre profit which was paid to the Millers in stock of the company. For the balance of the consideration the Miller Land Company executed its notes in favor of the Fidelity Immigration Company for the respective amounts, and payable on the several dates stated in the agreement before mentioned. These notes were secured by a vendor's lien on the land, reserved in the deed, which was duly recorded in the deed records of Wharton county. The notes were immediately thereafter transferred to the plaintiff by the Fidelity Immigration Company. These are the notes upon which plaintiff seeks recovery in this suit.

The $2,000 of stock in the Miller Land Company which the Fidelity Immigration Company had agreed to take was not issued directly to that company, but was issued

and disposed of as follows: $1,000 was issued to F. A. Bruihl in satisfaction of commissions due him by the Fidelity Immigration Company in obtaining the contract of sale to the Millers; $250 was issued to Lee Hart for commissions due him by the Fidelity Immigration Company; $250 to George S. Gray in satisfaction of some equity of his in the land; and $250 to plaintiff.

After the land was conveyed to the Miller Land Company, O. L. Miller became the agent of the company for obtaining purchasers and making sales of the land.

It was agreed and understood that the Miller Land Company was to receive $32 per acre for all of the land sold by said agent, and one-half of whatever amount in excess of the $32 per acre that he could obtain for the land. In carrying out this contract with the Miller Land Company, O. L. Miller employed Mr. J. W. Roberts to assist him in interesting persons in the states of Kentucky and Tennessee in the land, and bringing them to Texas, and agreed to pay Roberts for his services one-half of the net profits of all sales made through him.

The first sale of the land made by the Miller Land Company was of two tracts of 60 and 100 acres, respectively. These tracts were sold for cash, and the proceeds, or the greater portion thereof, were paid to plaintiff, and he released his lien on the two tracts, and these tracts are not involved in this suit. After these sales were made O. L. Miller became in need of funds to carry on his business of advertising and bringing prospective purchasers from other states to investigate these and other lands which he had for sale as agent, and appealed to appellant to furnish him money to carry on his work, with the understanding that he would divide his net profits or commissions with appellant. Appellant under this agreement did furnish or had the Fidelity Immigration Company advance money to Miller for the purposes stated. This money was not all advanced at one time, and there is a conflict in the testimony as to the aggregate amount so advanced. Miller testified that the amount was about $700, and appellant's evidence shows that the Fidelity Immigration Company advanced Miller for expenses $1,200 or $1,300. The testimony is not clear nor definite as to the exact terms of this agreement. O. L. Miller testified in regard to the matter as follows:

"Mr. Vineyard assisted me in the sale of the Miller Land Company's land, as well as other land. I had quite a little land listed besides the land we bought from the Fidelity Immigration Company, but I didn't have any options, neither had I bought any other land, but I had quite a little land listed around over the country, like any other real estate man would have. We had considerable difficulty in making sales of those lands, and Mr. Vineyard and I had a verbal agreement that he would assist me in making those sales. This agreement between Mr. Vineyard and myself was made in the early fall of 1911, I think, and the terms of that agreement were that Mr. Vineyard was to furnish to me a certain amount of money by which I would be enabled to go ahead with the operation, and we would divide the net profits. By 'net profits' I mean the difference between the cost price of the land and the selling price, less the expense of selling. I think I sold that land all the way from $35 to $40 an acre. In answer to your question, if it isn't a fact that the agreement was that all over $32 that I could get for this Miller land was to be the profits which were to be divided between Mr. Vineyard and myself, half and half, I will say: I remember there was something said about that, but I don't remember whether it was $32—I don't remember what price was set."

The only evidence as to any profits paid to plaintiff or the Fidelity Immigration Company under this agreement was a payment of $142.50, and this amount was not a part of Miller's profits on the sale of any of the lands involved in this suit. Appellant testified that his undertaking to furnish funds to enable Miller to carry on the business of selling the lands was induced by a letter from Miller to him in which he asked if he (Miller) could not make some arrangement with appellant or the Fidelity Immigration Company by which he could have a sum of money placed to his credit at the bank for expenses, or have a joint account for himself and the Fidelity Company sufficient to take care of expenses. This letter states:

"Of course, you are aware of the fact that I am doing everything I can to promote business in this section, and out of such business the Fidelity shares equal with myself in all net profits, and, in order for me to continue this business, I must know where I am going to get the money on which to continue operations."

The plaintiff, testifying in regard to this letter, said:

"In reply to that letter I stated to Mr. Miller that I would make some suggestions to Mr. Chester, but I don't remember what the suggestions were to Mr. Chester. I wrote Mr. Chester in regard to that, and had Mr. Chester deal with him as I would advise, but I don't remember just what the advice was now. I think Mr. Miller did get some money. This letter states that he only wanted two or three hundred dollars, but that it had run up to two or three times that much, but I don't remember how much it was. I know, however, it had run up to a considerable sum.

"That twelve or thirteen hundred dollars that I say was advanced to him was money advanced to carry on the business, and was to be deducted from profits that he made on sales, and then, I understood, that after that was deducted, the profits that were made was to be divided pro rata between the Fidelity Immigration Company and the Miller Land Company."

The Mr. Chester referred to in this testimony was the secretary of the Fidelity Im-

migration Company, and he and appellant were, as found by the trial judge, the only record stockholders.

The evidence shows that the Miller Land Company, or rather O. L. Miller, as agent of said company, and Chester, the secretary of the Fidelity Company, kept their desks and papers in the same office, and that Chester assisted Miller in showing the lands to purchasers, and also that appellant on one or two occasions went with Miller to show the lands to prospective purchasers. The appellant further testified with reference to the alleged partnership:

"I never was a partner with O. L. Miller in any way. The principal business connection between Mr. O. L. Miller and myself was in assisting him in making sales and paying off that note he owed me. I think I have asked him a good deal about that—on every occasion I met him. I never had any agreement with O. L. Miller personally about the sales of land as land agent, or things of that sort. I personally had no agreement with Mr. Miller in regard to any division of commission between he and I, but I think the Fidelity Immigration Company did, and I knew about it."

The undisputed evidence shows that the Miller Land Company was to receive $32 per acre for the land, and the compensation or commission allowed O. L. Miller was the amount for which he could sell the land over and above $32 per acre.

[1, 2] We believe the foregoing statement contains all of the material facts upon which the trial court found as a matter of law—

"that in the sales of the lands to the defendants in this suit, and in the executions of conveyances therefor, and collection of the purchase money, appellant was a copartner of O. L. Miller and the Miller Land Company, and that such transactions were within the scope of the partnership agreement."

We think the evidence is wholly insufficient to sustain this conclusion of the learned trial judge. In the first place, if any partnership was shown it seems to us it was one between the Fidelity Immigration Company and O. L. Miller. The money that was furnished Miller to carry on his land agency business was furnished by the Fidelity Company, and the only division of profits ever made by Miller was with that company. No valid partnership agreement could have been made between the corporation and an individual, nor would the fact that appellant was the owner of most of the stock of the corporation. create the relation of partnership under the agreement with Miller and said corporation. So. Oil & Gas Co. v. Mexia Oil & Gas Co., 186 S. W. 446; Sabine Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 837; White v. Land Co., 18 Tex. Civ. App. 634, 45 S. W. 207.

But assuming, as the trial court evidently did, that in this transaction the Fidelity

Company was acting for appellant, and that the agreement was in fact made with appellant as an individual, the partnership created by the agreement was in Miller's agency business, and could not have the scope and effect given it by the trial court. The title to the land was in the Miller Land Company, and appellant's interest therein was that of the holder of the vendor's lien notes given by the Land Company for part of the purchase money for the land. When the land was sold by or through O. L. Miller all of the purchase money except that over and above the sum of $32 per acre belonged to the Miller Land Company, and, if it be conceded that appellant and O. L. Miller were partners in the land agency business, any such purchase money that was paid to this partnership was paid to it as the agent of the Miller Land Company. Certainly none of the money so received could have been applied to the payment of appellant's notes, and therefore it cannot be held that money so paid to this partnership was a payment by the Miller Land Company on its notes to appellant. We think it equally clear that this partnership agreement could not have the effect of making appellant responsible on the covenants of warranty in the deeds executed by the Miller Land Company to the purchasers. There is no evidence of any fraud or misrepresentation by appellant, nor any conduct on appellant's part which would estop him in equity from asserting his lien on the land, and the trial court bases the judgment in favor of appellees Brentlinger and Larsen solely upon this finding of partnership. The assignment complaining of this finding of the trial court must be sustained.

There is some conflict in the evidence as to the amount of money paid appellant by the Miller Land Company, but there is no evidence to sustain the finding of the trial court that appellant had been paid as much as $25 per acre on all of the lands sold to the defendants Proffer, Chase, and Baskerville, and that appellant's lien on said lands was thereby discharged and released under the terms of the release agreement above set out.

The only issues of fact submitted to the jury and the findings of the jury were:

(1) Was the note for $2,462.50, executed by J. P. Larsen in favor of Miller Land Company, accepted by plaintiff as payment on the notes due him by the Land Company? To this question the jury answered, No.

(2) Do you find from the evidence that plaintiff claimed to be the owner of this note and treated it as his own? Answer, No.

(3) What amount was paid plaintiff by the Miller Land Company out of the first sales of the tracts of 100 and 60 acres of land, respectively, to Fisher and Larsen? Answer, $5,-780.15.

They were then asked to find whether it was understood and agreed by the parties

that the $2,000 credit on the notes of the Miller Land Company which was paid in stock of the Miller Land Company was not to be considered a payment entitling the Land Company to a release pro tanto under the release clause in the contract of sale.

The jury found that this was the agreement between the parties, and that it had been ratified and acquiesced in by the Miller Land Company.

[3-5] The trial court, in order to sustain the finding that appellant had been paid $25 an acre on all lands sold to defendants before named, included the $2,000 credit for the stock in the Miller Land Company in the face of the finding of the jury that it was agreed by the parties it was not to be so included. It goes without saying that, whatever may be the state of evidence, a judge cannot base a judgment upon a finding of fact contrary to the verdict of the jury upon the issue. But, aside from the question of what amount had been paid appellant by the Miller Land Company, we cannot give the release agreement the interpretation placed upon it by the trial court. Under that agreement Miller Bros. and their successor, the Miller Land Company, were entitled to a release of 10 acres or more upon payment of $25 per acre on the land to be released. The Land Company could not, after making a general payment to appellant on the notes without asking that such payment be applied to the release of some designated tract, thereafter claim that it should be so applied. If the payment was made out of the proceeds of the sale of a particular tract of the land, equity would protect the purchaser of the particular tract of land who had furnished the money paid appellant against any lien of appellant if said payment amounted to $25 per acre; but a purchaser who had not paid as much as $25 per acre has no right to demand that previous payments made by the Land Company on the notes in excess of $25 per acre for the land, from the proceeds of which such payments were made, should be applied under the release contract to the discharge of appellant's lien on his land. To illustrate: The first sales by the Land Company of the 100 and 60 acre tracts, respectively, were for cash, and the jury finds that of the proceeds of these sales appellant was paid $5,780.15 by the Land Company. This amount was credited by appellant on the principal and interest due on the notes, and the Land Company made no request that the excess of such payment over the amount of $25 per acre for the land, which appellant released at the time the payment was made, should be applied to the discharge of appellant's lien upon any other portion of the land. We fail to see what equitable right the subsequent purchasers, Proffer, Chase, and Baskerville, have to insist that this excess received by appellant over the $25 per acre paid for the land sold Fisher and Larsen be applied to the release of appellant's lien on their land. Clearly the Miller Land Company has no right to make such claim. It paid the money without any request that it be applied under the release agreement, and, conceding that it might have been so applied if the company had then so demanded, there is no equity which will now entitle it to compel appellant to make a different application of the payment.

We do not think it necessary to discuss the various assignments of error presented in appellant's brief. What we have said disposes of the material questions presented. If any errors are shown in any of the remaining assignments, they are not such as are likely to occur upon another trial. For the reasons indicated the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

