## BEESLEY v. GUARANTY BOND & MORTGAGE CO. et al.

### No. 10056.

Court of Civil Appeals of Texas. San Antonio.

May 12, 1937.

Rehearing Denied July 7, 1937.

Rice & Rice, of San Antonio, for appellant.

J. Turner Vance, of Refugio, for appellees.

SMITH, Chief Justice.

This action involves title to 102 acres of land out of a larger tract of 286 acres in Refugio county. The land is subdivided into thirteen "Gardens," numbered from 1 to 13, inclusive, forming "Riverdale Gardens."

On February 6, 1931, W. E. Tedford and C. C. Tedford, joined by their wives, then owners of the land, conveyed the same, by general warranty deed, to P. L. Telford, retaining the vendor's lien to secure the payment of Telford's ten purchase price notes. The deed provided for partial releases of the vendor's lien, in the following clause:

"And it is further covenanted and agreed that in the event said grantee P. L. Telford, heirs and assigns, *desire to discharge this vendor's lien* in whole or in part he or they may do so upon payment of the sum or sums of money set opposite each Garden tract contained in the Riverdale Gardens above described according to the schedule as follows, to-wit: * * *

"It being further understood and agreed between the parties hereto that upon the payment of anyone or all of the above mentioned sums of money set forth opposite each garden tract as is listed and scheduled aforesaid, the said grantee, P. L. Telford, heirs and assigns, shall be entitled to and receive a full and complete release and discharge of this vendor's lien insofar as said lien applies to and covers any particular Garden tract or tracts so discharged by the payment thereof according to schedule."

At the same time Telford, the grantee, gave his deed of trust upon said land, to secure said notes, which provided for partial releases in the following clause:

"It is also agreed in the event the undersigned desires to release or discharge this Deed of Trust in whole or in part he may do so upon payment of the sum or sums of money set opposite each tract of land in the Riverdale Gardens according to the following schedule, to-wit: * * *

"It being understood and agreed that upon the payment of any one or all of the above mentioned sums of money set forth opposite each Garden tract as above scheduled and listed, the undersigned shall be entitled to and receive a full and complete release and discharge of this Deed of Trust and vendor's lien insofar as said lien applies to and covers any particular tract or tracts so released by the payment of the sum of money contained in the schedule set forth herein."

On April 18, 1931, P. L. Telford conveyed said property to L. W. Telford, who accepted same subject to an outstanding federal farm loan, and to said vendor's lien notes.

Thereafter, on July 13, 1931, L. W. Telford conveyed Gardens 9, 10, 11, 12, and 13, containing 102 acres, to W. C. Beesley, who accepted subject to said federal farm loan and outstanding taxes, and without reference to the outstanding vendor's notes and lien. This deed was not filed for record until October 10, 1931.

In the meantime, however, by instrument dated September 1, 1931, and filed for record on September 8, 1932, the Tedfords assigned to Guaranty Bond & Mortgage Company said original vendor's lien "notes (1 to 7 inclusive) and lien and all liens and titles held by us in the said land," describing the 286-acre tract. The Tedfords, mortgagees, retained the remaining vendor's lien notes, 8, 9, and 10.

Long afterwards, on November 1, 1932, the latter notes, 8, 9, and 10, were paid, apparently by P. L. Telford, the mortgagor, to whom the mortgagee thereupon released said notes and the lien securing the same, in general terms.

On December 6, 1932, in default of the payment of the remaining unpaid notes, one to seven, inclusive, the land was sold by the trustee under power conferred in the deed of trust given to secure said notes, then held by appellee Guaranty Bond & Mortgage Company, which became the purchaser at such foreclosure sale.

As stated in appellant's brief: "Guaranty Bond & Mortgage Company * * * as plaintiffs, sued W. C. Beesley, as defendant, and prayed judgment 'that defendant's claims are without foundation and void,' and that the cloud constituted by said claims be removed from their title. Beesley answered, pleading his title in answer to plaintiffs' suit; and, by a cross-action, the statutory trespass to try title, sought to recover title and possession of the 102 acres contained in Gardens 9, 10, 11, 12, and 13. Trial to the Court without a jury resulted in a judgment for plaintiffs that 'any and all claims of defendant Beesley to Gardens 9, 10, 11, 12 and 13 be and the same are hereby declared null and void * * * and that defendant Beesley recover nothing on his cross-action.' From this judgment, Beesley, as appellant, prosecutes this appeal."

It is the contention of appellant that the provision for partial release inured to his benefit by reason of his purchase of Gardens 9 to 13, inclusive, containing the 102 acres involved in this suit; that the payment of notes 8, 9, and 10 by Telford, the mortgagor, to Telford, the mortgagee, entitled appellant to a release of the vendor's lien upon the 102 acres, or Gardens 9 to 13, inclusive, since those payments, made on notes 8, 9, and 10, and a partial payment on note 7, exceeded the sum of specific payments which, under the original contract, would have entitled the mortgagor to a release as to said Gardens 9 to 13 upon compliance with the provisions for partial release.

The record shows that when Telford sold 102 acres of the whole tract to appellant, Beesley, no part of the outstanding vendor's lien notes had then been paid, nor were they paid then, or as a result of such sale, either by the mortgagor or appellant, his vendee. The mortgagee still owned all those notes, at the time appellant purchased the 102 acres. Two months later the mortgagee sold the first seven of those notes to appellee, together with "all liens and titles held by" the mortgagee "in said land." The mortgagee retained the remaining three vendor's lien notes for more than sixteen months after the sale of the 102 acres to appellant, and then released said notes to the mortgagor, with the stipulation that "it is expressly understood and agreed that this release does not in any manner affect, alter or impair the lien securing the payment of the said above mentioned notes Nos. 1 to 7, inclusive, heretofore transferred to the Guaranty Bond & Mortgage Company." No partial release of the lien as it applied to any particular parcel of the land was ever made by the mortgagee, or requested of him by the mortgagor or his vendee. No payment of the purchase price of the land was ever made with reference to any particular parcel of the land, and the payment of notes 8, 9, and 10 was made generally, with no agreement that it should apply to any particular parcel, and the release of the lien by virtue of that payment was made generally, and without reference to any particular parcel. In this situation appellant, who long prior to such payment purchased 102 acres of the whole tract, paid no part of the mortgage debt, or the notes evidencing that debt, was in no position to demand a release of the vendor's lien upon the part he purchased, nor did the mortgagee have power to make such partial release. Perry v. Dowdell, 38 Tex.Civ. App. 96, 84 S.W. 833; Vineyard v. Miller Land Co. (Tex.Civ.App.) 209 S.W. 693; Kendall v. Johnston (Tex.Civ.App.) 258 S. W. 1093.

The judgment is affirmed.

### On Motion for Rehearing.

It was stated in the original opinion that notes 8, 9, and 10 were paid on November 1, 1932, and that no part of any of the notes involved had been paid when Beesley purchased the 102 acres involved, on July 13, 1931. In his motion for rehearing appellant bitterly complains of both findings, contending that they have no sort of foundation in the record. There is no affirmative original evidence in the record of the dates of payments made upon said notes, but it is recited in the transfer of notes 1 to 7 inclusive, from the original payee to appellee, that "note numbered 7 has a principal credit of $2110.15, as of February 8, 1931," whereas, appellant did not purchase the 102 acres until February 13, 1931. And it was recited in the release of notes 8, 9, and 10 by said payee, that said notes "have been fully paid," said release having been executed on November 1, 1932, nearly a year and a half after appellant purchased the 102 acres. We were therefore in error in stating in the original opinion that said partial payment had not been made on note 7 when appellant purchased the 102 acres. We see no reason, however, why the statement in the original opinion, that notes 8, 9, and 10 were not paid until November 1, 1932, should be recalled. Certainly that is true so far as the record shows to the contrary, and in the absence of affirmative original evidence of the date of such payment, we see no reason why we should not assume that payment was made at the time the notes were released by the holder. In any event, we think these matters are immaterial to the decision. There is no contention, nor anything in the record to support any assumption, that appellant paid any part of said notes, or that any part of them was paid at the time appellant purchased the 102 acres, or that it was intended by any of the parties that such payments should inure to the benefit of appellant, who was a stranger to all the transactions between mortgagor and mortgagee. If appellant was entitled to any benefit from the payment of the notes, he should have alleged and proved the facts upon which he relied. In the absence of such showing, the whole record, both of law and facts, negatives the contention of appellant that he was entitled to any of those benefits. All the conveyances between the parties show that in order to entitle the mortgagor or his assigns to partial releases it was incumbent upon him to pay the specified amount chargeable to the particular parcel desired, and be released accordingly.

It is not contended, and the record negatives the facts, that appellant paid any sum for that specific purpose, or any other purpose, or that he paid anything to anybody; or that anybody paid any amount for his benefit. Wherefore, neither he, nor any one for him, earned the release for which he sues in this case.

Appellant's motion for rehearing will be overruled.