POWELL, P. J.
This cause is before the Supreme Court upon certified questions from the Honorable Court'of Civil Appeals of the Ninth District. Ordinarily, we think it preferable to quote the certificate in full. .But such procedure in this case would require us to copy into our opinion 26 pages of typewritten matter, most of which is in single-space type. For that reason, we have decided to abbreviate the certificate, using such portions of it only as will) together with our own summary of other portions thereof, bring the real controversy clearly before the court.
The certificate begins as follows:
“In this case certain issues of law are presented about which we are not in accord and which are involved in the questions submitted herewith. The following statement of the case is sufficient, as we understand the record, to give you a clear understanding of the nature and purpose of this suit:
“On the 9th day of August, 1897, Col. Roger Q. Mills of Corsicana, Navarro county, Tex., éntered into the following contract with his friend, Capt. James Garitty, for the purpose of having certain lands owned by him, and which were believed to be oil bearing, developed for oil:
“ ‘This agreement made and entered into this the 9th day of August, 1897, between Roger Q: Mills and James Garitty, witnesseth:
“ ‘That said Garrity agrees to advance whatever money may be necessary to bore two or more wells for oil or gas on the land owned by said Mills, east of and adjoining the town of Corsicana, and for the piping and all othei-expenses incident to the production, transportation and sale of the oil or gas obtained from said wells, and if said wells when bored shall be dry, the loss incurred shall be borne by said Garitty only. But if oil or gas shall be obtained from any part of said land, it shall be sold and the proceeds applied first to the payment of all expenses incurred by said Garitty and incidental to the oil or gas business, and all profits derived from the business, after the payment of all expenses, shall be divided equally between said Mills and Garitty. It is further agreed that if said first wells prove a success, said Garitty agrees to and shall have the right t<j continue boring for oil or gas on said Mills tract of 940 acres as fast as the machinery for boring can be obtained, so that one well per month shall be bored and one well to each ten acres of ground, where oil or gas is found in paying quantities. It is agreed that he shall commence near Post Oak creek, at a point agreed on between us, and in other boring move in such direction as may be requested by said Mills so long as oil or gas in-paying quantities is found in that direction.
“ ‘All profits that may be made from the oil or gas obtained after, paying all expenses shall be equally divided between us, but the profits until further provided are to be applied to the boring of wells and to the development of the oil or gas on said land. The Ideation of the wells to be agreed upon between us-, and all the business of every kind mentioned in this agreement to be carried on by the joint consent of both of us, and this agreement is to continue in force as long as it is profitable to us to carry on the business of boring for and *756 selling oil or gas, and it'is to terminate whenever said business becomes,unprofitable and is abandoned. This agreement shall not apply to any other profits that may be derived from said Mils’ land and only includes profits from sale of oil or gas, and it is further agreed that the oil or gas business shall be so conducted as to interfere as little as possible with the cultivation of the land upon which the business is transacted. And it is understood and agreed that reasonable diligence is all that will be required of said Garitty in carrying out his part of the contract wherein he agrees to complete one well every thirty days, and failure to do so on account of accidents while boring, labor strikes, or inability to get material in the due course of business shall not forfeit his contract, or subject him to damages.
“ ‘Witness 'our hands the day and date above written. R. Q. Mils,
“ ‘Jas. Garitty.’ ”
On February 17, 1908, Senator Mills wrote his will. The pertinent sections thereof read as follows:
“Second. It is my will that the development of oil on my lands of the Jehu Peoples survey shall be continued after my death as long as Captain Janies Garitty and my son, Charles H. Mills, shall think it profitable, and for that purpose I reserve from the grants of land of that survey hereinafter contained all the tanks, pipes, wells and other property belonging to Mills & Garitty,' and the right to bore for oil, lay pipes, build tanks and all other purposes necessary to carry on the business of Mils & Garitty on said Jehu Peoples survey.”
“Fifth. I give to my daughter, Frances M. Richards, 500 acres of land of the Jehu Peoples survey, all of that part of said survey belonging to me which lies north of Post Oak creek in Navarro county, and fifty shares of stock in the Central Texas Grocery Company of '’Corsicana, Texas. The land herein granted is under the reservation contained in section two of this will.
“Sixth. In addition to the grants contained in the foregoing sections of this will, I give to my three children, Carrie M. Wood, Charles H. Mills and Fannie M. Richards in joint ownership 430 acres of land, all of tfyat part of the Jehu Peoples survey which belongs to me lying south of Post Oak creek near Corsicana, Navarro county, Texas, under the reservations contained in section second of this will. I also give to my three children in joint ownership my homestead in the city of Corsicana. They may hold these properties together or may sell them and divide the proceeds equally among themselves at any time that it may seem best to them to do so.
“Seventh. I also give to my three children, in joint ownership, my interest in the oil business conducted under the' firm name of Mils & Garitty, and I give them also in joint ownership all other property of whatever nature of which I may die possessed.”
On May 22, 1911, Col. Mills added a codicil to his will, but it has no bearing upon this case. Shortly thereafter he passed away. His heirs thereupon executed a deed of partition among themselves, accepting the terms of the will and giving full effect thereto.
On April 22, 1920, Mrs. Frances hi. Richards, one of the daughters of Senator Mills, executed a deed to B. B. Munsey. The relevant portions thereof read as follows:
“First. All that certain tract or parcel of land situated in said Navarro county, Texas, and particularly described as follows, to wit: 500 acres more or less of the Jehu Peoples survey lying just east of the city of Corsicana and north of Post Oak creek, being all that part of said survey belonging to or owned by me, and being the identical 500 acres more or less devised and bequeathed to me by and in the will of my father, R. Q. Mills, deceased, which will is of record in Yol. 25, page 230, of the Probate Mnui^es of Navarro county, Texas, and the same tract of land out of said survey received by me in the partition of his estate among his heirs as shown by partition deed executed by said heirs April 10, 1912, and recorded in Yol. 171, page 616, of the Navarro County Deed Records, to which deed and will and the records thereof as aforesaid reference is hereby made for further and more particular description of said land, the intention' herein being to convey all of the land on said survey received and owned by me under and by virtue of said will and said partition dped, being the same 500 acres more or less, it being understood that said land and the other property herein conveyed are sold and conveyed as a whole for the lump sum of $125,000, payable as above set forth and not by the' acre.
“Second. All of my right, title and interest in and to any and all oil, gas and minerals in and under said land, together with all of my right, title and interest in and to all oil, gas and mineral rights in and to said land, regardless of how such rights may have been acquired or are now owned, the intention hereof being to sell all of the oil, gas and mineral rights in and to said land owned by me together with all of my right, title and interest in and to the Mills & Garitty Oil Company or in and to the oil business conducted under the firm name of Mills & Garitty, under what is known as the ‘Mils & Garitty Contract,’ including all rights, privileges and property real, personal or mixed owned by or accruing to me under and by virtue of the same.
“Third. Any and all other rights and interest I have or may have under or by virtue of said Mils & Garitty contract in and to the producing and operating plant owned by said Oil Company or said firm of Mills & Garitty, including tanks, pipes, wells, casings, pumps, connections and any and all machinery and apparatus of 'any sort or description.
“This deed is executed and delivered by the grantor and accepted by the grantee with the distinct understanding and agreement that the warranty clause herein contained applies and refers to the land only and that this deed is to be held and operate merely as a quitclaim deed to all of the other property and rights and interests herein conveyed and more particularly described in Sections Second and Third of above description.”
The Court of Civil Appeals then sets out a great deal of oral evidence, showing what happened under the written instruments already described by us in our opinion. There is practically no conflict in the testimony. *757 It all goes to show that Capt. Garitty executed his part of the original contract promptly and faithfully. The business ran along, with much profit to its owners, from 1897 to 1920. During all of those years no misunderstandings ever arose. For many years prior and subsequent to the death of Senator Mills everything was entirely agreeable. Upon the death of Senator Mills, his son, executor under his will, took his place as one of the managing partners in a joint oil business, and the Mills heirs received dividends as per their interest as provided in the will. Not only so, but the undisputed evidence shows that Mun-sey himself, after he purchased the interest of Mrs. Richards in the partnership, accepted his dividends ás her substitute therein.
The record shows that Capt. Garitty expended great sums of money in exploring for oil and marketing the same. He took 'all the risk. Senator Blills had refused to execute a lease to the oil companies, preferring to develop his lands in co-operatiori with a man who had been the friend of a lifetime. These two men trusted each other. The proof shows that Capt. Garitty told Senator Mills to write the contract to suit himself and 'that he would sign it. So he did.
Within SO days after Blunsey received his deed from Mrs. Richards, he began negotiations looking to the purchase of the Mills & Garitty partnership business. He was the first outsider to enter the partnership. Theretofore it had always belonged to the Blills and Garitty families. It seems that the trading point was almost reached on more than one occasion. But, being unable finally to consummate the purchase of the entire partnership business, Blunsey began making other contentions, which gave rise to the filing of this case by Mills & Garitty.. The nature of the claims asserted by Blunsey may be gathered from the following portions of the petition filed in this case:
“(10) Plaintiffs further show that after the purchase of said land and said interest in the firm of Blills & Garitty, as aforesaid, the said B. B. Munsey at Ms own instance and request became a member of the said' firm of Mills & Garitty, and said firm continued to operate as before under its claim of-ownership of the fee-simple title to said mineral estate, and he received his proportional part and share from the earnings of said Blills & Garitty under the terms of said deed from Prances ,B1. .Richards and under the terms of the will of Roger Q. Blills, which reserved and created a mineral estate separate and apart from the real estate and vested said mineral estate in the said Blills & Garitty. Notwithstanding the definite and fixed rights in said land and in said mineral estate, the said B. B. Blunsey by reason of certain indefinite language used in said deed by the said Prances M. Richards in conveying to him, to wit, ‘All of my right, title and interest in and to all oil, gas and mineral rights, and in and to said land, regardless of how such rights may have been acquired, or now owned,’ is now claiming that the agreement between Roger Q. Blills and James Garitty above set out is simply a franchise, giving the said Garitty a personal right to take the oil from said 500 agres of land during the lifetime of the said Garitty, and that the same is not assignable or transferable, and that Mills & Garitty and the members thereof under said agreement, or under their ownership, which he alleges is pretended, have no right to drill any more wells on said 500 acres of land, or to explore for oil thereon at a lower depth than the wells now on same; that the claim of said defendant is continually stated and reiterated privately and publicly, and is false and constitutes a slander on the right and title of plaintiffs to the mineral estate under said, lands, as well as a trespass thereto and thereon against plaintiffs, and the possible danger therefrom is imminent and real, in that it is of a nature calculated to prevent these plaintiffs’ use, enjoyment, and disposition of their property, and will materially affect the market value and does affect the market value of said property, and is intended to interfere with and prevent and upset the sale of plaintiffs’ property, to their damage $150,000; and inasmuch as said agreement between the said Blills & Garitty is of such a nature that it would require plaintiffs to introduce extraneous evidence to with greater certainty establish their rights and defenses above pleaded, the said claim of defendant does threaten and is a cloud upon plaintiffs’ title which should be removed in order to quiet plaintiffs in the enjoyment of their property.
“(11) Plaintiffs further show that the above and foregoing set out all the claims or pretended claims of said defendant in so far as plaintiffs know or can anticipate op conjecture, but should they be mistaken in this and the said defendant be claiming or pretending to claim or set up any other additional claim whatsoever, then all such claims or pretended claims cast a cloud or clouds upon plaintiffs’ title to said mineral estate underlying said land owned ’by plaintiffs, and the same should be removed and held for naught and plaintiffs’ title to said mineral estate should be quieted, and the title of Mills & Garitty and the members thereof, and plaintiffs’ title to said mineral estate should be adjudged to be superior to and exclusive of the claim, or pretended claim of defendant through the conveyance to him by the said, Frances M. Richards.
“Premises considered, plaintiffs pray that citation issue against said defendant, B. B. Mun-sey, requiring him to appear and answer this petition, and that upon final hearing Blills & Garitty and the members thereof have judgment divesting the title thereto from defendant and declared and vested in the said Mills & Garitty and the members thereof; that the claims of said defendant through the conveyance to him by Frances M. Richards, and the deed itself and the provisions thereof, be declared a cloud upon the title of Blills & Garitty and the members thereof to the mineral estate underlying said land, and that the same be removed and held for naught, and that this court by its proper order, judgment, and decree, declare the title of Mills & Garitty and the members thereof paramount and superior to any claim or pretended claim of said defendant to said mineral interest, and that all records or omissions from the records which cast a cloud upon the title of Mills & Garitty. and the members thereof be quieted; that any *758 apparent insufficiency in the record title of Mills & Garitty and the members thereof to said mineral estate- under said land be supplied, cured, and declared sufficient, and for all further relief, both legal and equitable, general and special, to which they may be entitled, and judgment for damages against said defendant in the sum of $150,000, and for costs of suit.”
The trial court entered judgment for Mills & Garitty, quieting their title and establishing their rights in the partnership, as prayed for. The Oourt of Civil Appeals, not being in agreement upon the construction of the 'contract in the light of the undisputed facts aforesaid, concluded its certificate by propounding the following questions:
“(1) What character of interest or title did Capt. Garitty acquire under the Mills contract to the lands described therein; that is, did he acquire a title to the oil in place, or a mere license to enter upon the premises and explore for oil?
“(2) Whatever may be the character of title acquired by him, was it such an interest under the contract as ,was subject to sale by him during his life, or would descend to his. heirs at his death, or was subject to devise by him under a legally fexecuted will?
■ “(3) The facts of this case show that Col. Mills and his children and appellant have been the members of a partnership with Capt. Gar-itty, whose.business was to operate and develop the Mills land for oil. Now, what effect, if any, did the organization and active operation of said partnership have upon Oapt. Garitty’s interest as conveyed to him under the contract; that is, did his interest under the contract pass to and become a partnership asset, or was the partnership only for the purpose of operating his interest in the lands jointly with the Mills interest? If a partnership, was it ‘a mining partnership’ ?
“(4) If Capt. Garitty and the Mills heirs, without the concurrence or consent of appellant, Munsey, should sell their interest in the Mills oil lands to-a stranger-, would appellant have the right to take immediate possession of all the land’ conveyed to him by Mrs., Richards. and all of the oil wells situated thereon; that is to say, would a sale by the partnership of Mills & Garitty of that interest in the lands purchased by appellant from Mrs. Richards which is being used, operated, and developed under the terms of the Mills-Garitty contract, as they construe it, operate as a forfeiture of that interest and divest the partnership of all right to further develop said lands or operate the wells now in existence ?
“(5) Has Capt. Garitty, or through him the' partnership of Mills & Garrity, the • exclusive right to' develop the Mills lands for oil and operate all the wells drilled thereon, free of any individual claim on" the part of appellant, Munsey ; that is, a claim which he might assert individually, as distinct from his interest in the partnership?
“(6) Under the contract between Col. Mills and Capt. Garitty, is the right to develop the land personal to Capt. Garitty and would his death end that right, or, under the terms of the contract, is the right to develop the land a part•nership asset? If the right to develop the land for oil belongs to Capt. Garitty individually, does he have the right to sell it, or devise it, or, if he should die intestate, would it pass to his heirs? If the right to develop the land for oil is a partnership asset, on the dissolution of the partnership, whether by agreement or otherwise, would such right be administered as a partnership asset? If the right to develop the land for oil is personal to Capt. Garitty, and not a partnership asset, and if his sale or death would not forfeit or terminate such right, in whom would be the title to the 50 per cent, interest in the oil rights reserved to Col. Mils under the terms of the contract; that is tó say, if Capt. Garitty has such an interest in the oil in place and the right to develop the lands for oil and remove the same, which is subject to alienation or would descend to his heirs or legal representatives, would the dissolution of the present partnership, from any cause whatever, operate to divest the holders of the Mills 50 per cent, interest of the claim of title now asserted by them thereto?
“Other interesting questions are raised by the pleadings of the parties and suggested under appropriate assignments and cross-assignments, but as to these we are in accord, and do not involve them in this certificate.”
The questions Certified are capable,of true decision only by accurately determining the character of this partnership created by Col. Mills and Oapt. Garitty. It is clearly a mining ' partnership. There are certain well-settled principles of law governing such partnership, and these principles determine the.answers which must be given to the questions certified. But, before discussing those principles, it is well to look to the contract and the will of Col. Mills to see just what estate in his land he intended to convey to this partnership oil business. To us, the answer is perfectly obvious. He intended that the oil and gas mineral estate should be severed from the other estate in the acreage involved. If the . contract itself leaves this question in any doubt, then such doubt is entirely removed by the terms of his will-He conveyed his land in separate tracts to his several children, but in dealing with the 940 acres, and the various parts thereof, he expressly reserved this mineral estate. The latter estate in all the land he bequeathed in equal parts to his three children. It is true that the contract itself .contains no express words of granting or conveying. But precise words are not important in construing a contract of this kind. We are-to seek mainly the intention of the parties. In the Fourth Edition (1925) of Thornton’s Law of Oil and Gas, vol. 1, § 50, p. 131, it is said:
“In determining the scope and legal effect of an instrument giving rights and privileges to-mine or take mineral, oil, or gas, it is immaterial by what name it is called, whether a ‘lease,’ ‘contract,’ ‘grant,’ or ‘deed of conveyance.’ The court will look to the language used in the instrument, aside from these terms so used, and determine its legal effect. The most, commonly used term is the word ‘lease,’ and yet many such an instrument has been considered as giving an estate of inheritance, which *759 fact made it a deed of conveyance. Thus an agreement for a lease may be in fact the lease itself, and mineral contracts partaking of the nature of a sale or demise will be treated as leases. So conveyance may be treated' as a lease.”
- Again, from the same volume of Thornton’s work, page 145, we quote:
“When the lessee has developed the land according to the terms of the lease he acquires something more than an interest in or title to the gas and oil he produced through his efforts thereon. He acquires ‘a vested interest in the land for the purposes named in the lease.’ ”
In this same connection, we quote from 27 Gyc. p. 683, as follows:
“It is not, however, necessary that the. instrument severing the surface from the mineral rights should be in the form of a conveyance, for it has been held that a written contract, although not under seal, granting the privilege of digging for minerals or ores in the vendor’s land, is equivalent to a conveyance of the title to the minerals or ores in fee.”
In the case of Texas & P. Ry. Co. v. Durrett, 57 Tex. 48, one Durrett executed an easement on his wife’s separate property to the railway company, but it was more than an easement for right of way purposes. It granted the railway company the right to “use the wood, timber, water, gravel, etc.,” on said land. Our Supreme Court held that authorizing the removal of portions of the land made it a deed to a part of the land itself, and that the husband alone could not convey his wife’s separate real estate. Judge Stay ton, in that case, spoke as follows:
“The right attempted to be conveyed is, however, more than an easement in the legal acceptation of that term; in addition to granting a mere easement, it attempts to give the right to take something out of and from the soil, which is known in the books as a profit a prendre — a right coupled with a profit. Referring to this subject in -his work above referred to, p. 11, Mr. Washburn, commenting upon the case of Post v. Pearsall, 22 Wend. [ (N. Y.) ] 425, says: ‘The distinction seems to be this: If the easement consists in a right of profit a prendre, such as taking soil, gravel, minerals, and the like, from another’s land, it is so far of the character of an estate or interest in the land itself, that, if granted to one in gross, it is treated as an estate, and may therefore be one for life or inheritance.’
“Such being the character of the conveyance under which the appellant claims, if valid, it carries with it an interest and estate in the separate property of the wife which at no future time can be revoked.”
If it was the intention of Ool. Mills, in his contract, and in his will, to sever the oil and gas mineral estate in his land from the surface estate therein, and transfer the former to the Mills & Garitty partnership, then, under all ’the recent decisions of our Supreme Court and Commission of Appeals, such an estate is an estate in the land itself and subject to assignment and inheritance as long as the right to mine the oil exists. In this case, that right exists as long as the partners, or those with controlling interests in the partnership business, think it profitable to conduct the enterprise.
Our Supreme Court has long recognized the separate estates in realty. See Cox v. Robison, 105 Tex. 426, 150 S. W. 1149; Stephens County v. Oil and Gas Co., 113 Tex. 160, 254 S. W. 290; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607; Sawyer v. Robison, 114 Tex. 437, 268 S. W. 151. Chief Justice Cureton, in the Gammon Case, supra, said:
“The minerals in place were severed by the .conveyance from the residue of the soil, and the original land as effectively divided into two tracts as if the division had been made by superficial lines, or had been severed vertically by horizontal planes.”
Continuing in the same case, he said.:
“But in the case before us, Kennedy’s deed effectively severed the minerals in place from the remainder of the land; and each division of the land, the mineral division retained by Kennedy, and the remainder conveyed to Sanch-es, thereafter was held in fee, each carrying with it full power of occupancy, control, unlimited duration, right of alienation, inheritance, and every other attribute .of an estate in fee simple, except the title of Sanches was not indefeasible until the purchase-ftioney notes were paid.”
We are of the view that, under the express provisions of the contract and will of Col. Mills, the oil and gas were severed from the regt of the land, and such minerals placed into the partnership business of Mills & Garitty, each of the original partners owning a half interest therein. Of course, such interests became vested, subject to assignment and inheritance as long as the partnership existed. Ordinarily, this latter statement would not be true, because partnerships, generally speaking, are dissolved by death of. any one of the members. But in the case at bar, we have a mining partnership and different rules apply.
This brings us to a discussion of the rules applicable to mining partnerships. They are:
“A mining partnership arises by operation of law where co-owners work a mine. Rowley on Law of Partnership, § 153. Howard v. Luce (C. C.) 171 F. 584; Walker v. Bruce, 44 Colo. 109, 97 P. 250; Manville v. Parks, 7 Colo. 128, 2 P. 212; Dale v. Goldenrod, etc., Co., 110 Mo. App. 317, 85 S. W. 929; Daily v. Fitzgerald, 17 N. M. 137, 125 P. 625, Ann. Cas. 1914D, 1183-N; Bentley v. Brossard, 33 Utah, 396, 94 P. 736; Hartney v. Gosling, 10 Wyo. 346, 68 P. 1118, 98 Am. St. Rep. 1005; Marks v. Gates, 2 Alaska, 519.
“It is not essential to the creation of a mining partnership that the partners shall expressly agree to become partners, or that there be an *760 express agreement to share the profits and losses, as that is an incident in the prosecution of the general business. Walker v. Bruce, 44 Colo. 109, 97 P. 250; Bentley v. Brossard, 33 Utah, 396, 94 P. 736.
“Mining partnerships are recognized in Texas. Randall v. Merideth et al., 76 Tex. 669, 13 S. W. 576.
“In a mining partnership, the mine is owned by the partners as tenants in common. Row-ley on Law of Partnership, § 152; Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764; Bissell v. Foss, 114 U. S. 252, 5 S. Ct. 851, 29 L. Ed. 126; Kahn v. Central Smelting Co., 102 U. S. 641, 26 L. Ed. 266; Meagher v. Reed, 14 Colo. 335, 24 P. 681; 9 L. R. A. 455; Harris v. Lloyd, 11 Mont. 390, 28 P. 736, 28 Am. St. Rep. 475; Daily v. Fitzgerald, 17 N. M. 137, 125 P. 625, Ann Cas. 1914D, 1183, note; Lindley on Partnership, p. 55.
“In a mining partnership, the ownership of the mine as cotenants allows one partner to sell his share to a third person without the consent of his copartner and without dissolving the partnership, since the profits follow the property. Rowley on Law of Partnership, § 152; Loy v. Alston, 172 F. 90, 96 C. C. A. 578; G. V. B. Mining Co. v. First Nat. Bank, 95 F. 35, 35 C. C. A. 510; Thomas v. Hurst (C. C.) 73 F. 372; Nisbet v. Nash, 52 Cal. 540; Dur-yea v. Burt, 28 Cal. 569; Hawkins v. Spokane, etc., Co., 3 Idaho, 241, 2S P. 433; Southmayd v. Southmayd, 4 Mont. 100, 5 P. 318; Lamar v. Hoyle, 79 Va. 147; Blackmarr v. Williams, 57 W. Va. 249, 50 S. E. 254, 4 Ann. Cas. 265 and note; Childers v. Neely, 47 W. Va. 70, 34 S. E. 828, 49 L. R. A. 468, 81 Am. St. Rep. 777.
“The exception which in a mining partnership allows one partner to sell his interest without the consent of the other partners and without dissolving the partnership, grows out of the necessities of the case which require the continuous working of mines in order that they may be profitable. Rowley on Law of Partnership, § 152.
“Mining partnerships are applicable to oil and gas ventures. Thornton’s Law of Oil and Gas (4th Ed.) vol. 1, § 351.
“Where joint owners of an oil lease unite in operating the premises without any special agreement as to their relation, they constitute a mining partnership. Wetzel v. Jones, 75 W. Va. 271, 84 S. E. 951; Kirchener v. Smith, 61 W. Va. 434, 58 S. E. 614, 11 Ann. Cas. 870.
“The estate of a mining partner succeeds to his interest on his death, occupying the same relation to the other partners as he would if alive. Rowley on Law of Partnership, § 153; Boehme v. Fitzgerald, 43 Mont. 226, 115 P. 413.”
We have quoted these principles from a brief filed in our court by Judge Nelson Phillips of counsel for Mills & Garitty. We think they are accurate, clear, and correct, and supported by the authorities he cites. In fact, we do not understand opposing 'counsel to controvert any of those principles. They really contend that this was not a mining partnership because the contract and will show that Col. Mills did not intend that strangers should ever be introduced into,the enterprise. But, on the contrary, it is their view that it was a partnership only during the life of the original partners. We cannot concur in these views. Col. Mills’ own handling of this partnership business shows that he expected it to run indefinitely. He assumed the right to substitute his own son for himself as co-manager of the business. Again, he reserved the oil and gas and gave it to this partnership enterprise. He devised his interest in the partnership to his three children in a separate portion of Ms will. He knew either of his children might sell his or her interest in the partnership. He made no provision that they might not do so. As a matter of fact, Mrs. Richards did do so. And by virtue of her very act, Munsey stepped in and accepted the benefits arising from her specific interest in the partnership which he purchased. As we view this record, Mun-sey has benefited by a construction of the contract which gave to the Mills interest in the partnership the right of assignment and inheritance. ' But he would now deny to the Garitty interest the same rights. ’ He contends at this time that the death of Capt. Garitty ends that interest forever. It would be manifestly unfair fo deprive Capt. Garitty of his interest in this enterprise. He risked 'thousands of dollars in developing the property.- He should have the right to sell or devise his interest to those of Ms choice. But, regardless of the overwhelming equities in the case, we think he has these very rights under rules of'law.
In her deed to Munsey, Mrs. Richards referred him expressly to the Mills & Garitty contract and her father’s will, and she also provided in her deed that she was conveying such interest only as she acquired under her father’s will. Under that will, of which he had notice, Munsey, as assignee of Mrs. Richards, took the 500 acres of land minus the oil and gas thereunder. But he also purchased, in, the same deed, Mrs. Richards’ one-third interest in the Mills’ one-half of the partnership oil business. The partnership alone owned the oil and gas rights under the entire tract of 940 acres of land. Mrs. Richards herself did not inherit any oil and gas rights in her 500 acres of land except her undivided interest, under another section of the will, in the oil and gas rights in the Mills & Gar-itty partnersMp. Therefore Munsey could not get what she did not own herself.
In Kahn v. Central Smelting Co., 102 U. S. 645 (26 L. Ed. 266), Mr. Justice Field said:
“Mining partnerships as distinct associations, with different rights and liabilities attaching to their members from those attaching to members of ordinary trading partnerships, exist in all mining communities; indeed, without them successful mining would, be attended with difficulties and embarrassments, much greater than at present.”
*761 In Childers v. Neely, 47 W. Va. 70, 34 S. E. 828, 49 L. R. A. 468, 81 Am. St. Rep. 777, the Supreme Court of that state said:
_“One leading1 distinction between the mining partnership and the general one is that the general one has; as a material element of its membership, a delectus personse (choice of person), while the other has not. Those forming an ordinary partnership select the persons to form it, always from fitness, worthiness of personal confidence; but we know such is not always or often the ease in oil ventures. It is because of this delectus personse that the law gives such wide authority of one member to bind another by contracts, by notes, and otherwise. One is the chosen agent of the other-. Hence, when one member dies-or is bankrupt, or sells his interest to a stranger, even to an associate, the partnership is closed, one chosen member is gone, the union broken, because he may have been the chief dependence for success, and the newcomer may be an unacceptable person, who would entail failure upon the firm. In the mining partnership those occurrences make no dissolution, but the others go on; and, in case a stranger has bought the interest of a member, the stranger takes the place of him who sold his interest, and cannot be excluded. If death, insolvency, or sale were to close up vast mining enterprises, in which many persons and large interests participate, it would entail disastrous consequences. From the absence of this delectus personse in mining companies flows another result, distinguishing them from the common-partnership, and that is a more limited authority in the individual member to bind the others to pecuniary liability. He cannot borrow money or execute notes or accept bills of exchange binding the partnership or its members, unless it is shown that he had authority; nor can a general superintendent or manager.' They can only bind the partnership for such things as are necessary in the transaction of the particular business, and are usual in such business” — citing authorities.
27 Cyc. pp. 757 and 763 are interesting along this same line. The authorities seem to be as one.
Mining partnership cases in Texas are very rare. But Chief Justice Stayton had such a case before him in Randall v. Mérideth, 76 Tex. 669, 13 S. W. 385. He recognized and gave effect to differences between a mining partnership and others. The gist of his decision is found on page 683 of that report. We quote briefly as follows:
“It has been generally held that mining partnerships are nontrading partnerships, and the individual members of the firm without power to borrow money on the credit of the firm, unless the power be given otherwise than by implication for the ordinary nature of the business. Bates’ Law of Part. 329, 371; Lind, on Part. 266, 270; Coll. on Part. 658, 686, note 2; Pars. on Part. 108, 218, and note; Story on Part. 126; Story on Con. 279; Dan. on Neg. Inst. 357, 359.”
We see no reason why Texas should refuse to follow the universal rules of law applicable to mining partnerships. Our state is rapidly developing mines of various kinds. And Judge Stayton himself has already begun by recognizing one difference between a mining partnership and others. Under the law of mining partnerships, the relation arises by operation of law. But we are not required to go that far here. The written instruments before us establish this partnership enterprise themselves. Oil and gas are minei-als. It is a mining partnership. Once more, we are going to use the language of Judge Phillips, counsel in this case, in recommending answers to the questions certified. We do not think we can improve thereon or be more accurate and clear.
We recommend that the first question certified be answered as follows:
“The effect of the agreement between Col. Mills and Capt. Garitty was to create Capt. Garitty a co-owner with Col. Mills of the mineral estate in the land embraced in the agreement, he and Col. Mills holding and owning such estate as tenants in common.”
We recommend that the second question certified be answered as follows:
“The interest of Capt. Garitty was subject to sale during his lifetime and was also .subject to his devise by will, as any other property right. It was also capable of inheritance by his heirs.” _ '
We recommend that the third question certified be answered as follows:
"The individual interest of Capt. Garitty in the mineral estate did not become a partnership, asset of Mills ,& Garitty. The mineral estate owned by the two, of course, constituted assets of the partnership, but the interest of the partners remained their individual property. The purpose of the partnership was for the,operation of the two interests in the mineral estate.”
We recommend that the fourth question certified be answered as follows:
“Since the mineral estate in the land is owned by the partnership of Mills & Garitty and those.composing the partnership, as is also the consequent right to develop it, it cannot be.and is not owned ,by others. The interest in it of Col. Mills was by his will expressly reserved from his grant of this particular land to those to whom he devised the land. The interest of Col. Mills in the mineral estate was on the contrary made the subject of an express and separate devise, pamely, to his three children, Maj. C. H. Mills, Frances M. Richards, and Carrie M. Wood in joint ownership. Accordingly, by the transfer of her interest in such estate by Mrs. Richards to Munsey, Munsey acquired in such estate only the Mrs. Richards interest. The entire mine’ral estate in the land is an absolute estate, separate from the surface rights in the latid; and being owned exclusively by the members of the Mills & Garitty partnership, it is subject to sale by them as their property and their vendees would succeed to all of their rights in the estate. It follows .that such a sale would not operate as a forfeiture of the estate or confer upon Munsey *762 any right to take possession of it, or deprive the vendees of the partnership of their full rights as the owners of'the estate, with the corresponding right to operate the existing wells and develop the land with other wells.”
We recommend, that the fifth question certified he answered as follows:
. “The .partnership of Mills & Garitty, being the exclusive and absolute owners of the mineral estate in the land, have the exclusive right to develop the land for oil and. operate the oil wells drilled thereon, wholly free from any right on the part of Munsey except such as he has as a member of the partnership through his purchase of the Mrs. Richards interest.”
We recommend that the sixth question certified he answered as follows:
“The right to develop the land under the contract is not personal to Oapt. Garitty, and his death would not terminate it. That right be-lopgs to the partnership. The interest' of Oapt. Garitty in the mineral estate, together with his interest in this right, belongs to Oapt. Garitty individually, and being his individual property is subject to his sale or devise and to inheritance by his heirs. A sale by Oapt. Garitty of his interest, though without the consent of the other members of the partnership, would not dissolve the partnership. The same would be true of the sale by any other member of his interest, without Oapt. Garitty’s consent. A dissolution of the partnership could not and would not operate as the forfeiture of the interest of any partner. Upon a dissolution the holders of the Mills interest would still, as individuals, be the owners 'and holders of that interest, subject of course to any partnership debts. In other words, upon a dissolution of the partnership, the individual interest of each partner would still be his individual property, subject only to the partnership debts; and the partnership property would simply resolve itself into the individual property of the partners according to their respective interests, subject only to such debts.”
CURETON, O. J.
The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.