**GARDNER et al. v. WESNER et al.**

No. 7794.

Court of Civil Appeals of Texas. Austin.

Dec. 21, 1932.

Rehearing Denied Jan. 11, 1933.

Baker & Baker, of Coleman, and Paul Petty, of Ballinger, for appellants S. J. and L. J. Brendel.

Kerr & Gayer, of San Angelo, for appellees.

McCLENDON, C. J.

Wesner and Gruber (to whom we will refer as plaintiffs) sued Boyce, S. J., Frank, and L. J. Brendel, and others upon a contract to remove a bailer from and to clean an oil well; and to foreclose an asserted mechanic's lien upon oil well casing. All of the defendants were served by publication, and only defendants S. J., Frank, and L. J. Brendel answered, the others being represented by attorney ad litem. Upon a directed verdict the plaintiffs recovered a personal judgment against S. J. Brendel for $5,622.55, and against defendants Boyce, and S. J., and L. J. Brendel, foreclosing the mechanic's lien. From this judgment S. J. and L. J. Brendel have appealed.

The contract was in writing and was executed by Boyce as first party and by Wesner and Gruber as second parties. It recited that Boyce was the owner of the oil lease and Wesner and Gruber agreed to do the work of removing the bailer and cleaning the well. The defendants, other than Boyce, were sought to be held liable on the ground that they were all mining partners in the drilling of the well.

Appellants' contentions which appear to present questions of any substantial merit are disposed of by the following conclusions, which we have reached:

1. The evidence does not support a finding that S. J. Brendel was a partner (mining or otherwise) with Boyce in the drilling of the well.

2. The evidence shows conclusively that the casing upon which the mechanic's lien was foreclosed was the property of S. J. Brendel; that it was loaned to Boyce in connection with drilling the well; that plaintiffs knew of such ownership and contracted with reference thereto, and therefore there could be no mechanic's lien created thereon in favor of plaintiffs.

3. The evidence was not of such conclusive character as to warrant a directed verdict upon the amount of recovery.

Upon the issues of partnership and mechanic's lien the evidence showed: Boyce was the assignee of the lessee of an oil and gas lease containing the usual provisions of what is commonly known as an 88 form lease. Some time prior to December 12, 1929, a well had been drilled to a depth of 1,365 feet on the lease under a drilling contract between Boyce on the one hand and plaintiffs (as drillers) on the other.

On November 12, 1929, Boyce assigned to S. J. Brendel an undivided 4/32 interest in the lease, the assignment providing: "It being the intention of this assignment of interest to convey to the holder hereof, an undivided 4/32 interest in and to a well to be drilled on the above mentioned lease. This well to be drilled to a total depth of thirty-five hundred (3500) feet unless oil or gas is found in paying quantities at a lesser depth."

On December 12, 1929, plaintiffs and Boyce executed the contract in question, and another contract whereby the plaintiffs agreed to drill the well to an additional depth.

This latter contract contained the following stipulation: "That the party of the first part (Boyce) shall furnish the casing necessary to deepen said well, as herein set out. It is understood, however, by the parties hereto that said pipe belongs to and is the property of S. J. Brendel; that said casing is to remain the property of the said S. J. Brendel and is to be returned to him after its use on this well is no longer necessary, and it is further agreed that no attachment or lien of any kind shall be fixed upon said casing."

On May 14, 1930, S. J. Brendel assigned his interest in the lease to L. J. Brendel. On August 28, 1930, Boyce and Wesner executed a contract under which Wesner agreed to pull the casing from the well, the consideration being $700 cash. The evidence showed conclusively that S. J. Brendel, with Wesner's full knowledge, furnished the money which Wesner received under this contract. The contract contained the following recital: "Whereas he (Boyce) is desirous of having the casing pulled and placed upon a rack at the well, said casing belonging to S. J. Brendel when the same is pulled and placed upon a rack."

The partnership between Boyce and S. J. Brendel is predicated upon the above assignment of November 12, 1929, and the following testimony, taken from a deposition of S. J. Brendel:

"(b) What is your association with the said Geo. W. Boyce in drilling said well on the Lange farm in Runnels County, Texas? Explain fully.

"(c) What agreement, if any, have you with Geo. W. Boyce about sharing in the profits and losses in connection with the drilling of said well? Explain fully."

"(b) Association with Geo. W. Boyce was merely in the loan of certain casing for the well drilled by said Boyce and others.

"(c) I agreed to loan casing, not to exceed $15,000.00 in value, to the said Geo. W. Boyce, said casing to be used in the drilling of said well. If the well proved productive,

I was to receive in cash whatever money I paid for casing. If the well proved unproductive, I was to secure the casing pulled from the well, as it was my personal property. In consideration of my loaning the casing, Boyce assigned to me an interest of ⅛ of the net profits derived from said well; but all obligations for drilling and operating were for his account, and my sole interest was to be derived from the net profits resulting from his operation."

The evidence negatives any holding out of S. J. Brendel as a partner. The contract was made with Boyce alone, in his individual name, and solely upon his individual responsibility. To hold S. J. Brendel as a partner, therefore, the relation of the parties inter sese must alone be looked to.

■ In order to constitute a mining partnership (sometimes called a joint venture) there must be not only a joint ownership of the mining property (which of itself creates only the relation of co-tenancy), but also a joint operation. "The actual working of the mine by the joint owners is essential to a mining partnership." 22 A. & E. Ency. of Law, p. 228. This rule is so well established as to be now regarded as elementary (40 C. J., p. 1145; 18 R. C. L. p. 1200, § 106; 2 Thornton's Oil & Gas (5th Ed.) §§ 658–667; Summer's Oil & Gas, § 235), and has been followed in this state whenever the question has been presented. Bolding v. Camp (Tex. Com. App.) 6 S.W.(2d) 94; Leath v. Benton Abstract & Title Co. (Tex. Civ. App.) 9 S.W.(2d) 501; Lowry Oil Corp. v. Bennett (Tex. Civ. App.) 16 S.W.(2d) 947; Ferguson v. Rhoades Drilling Co. (Tex. Civ. App.) 271 S. W. 155; Adams v. Texhoma O. & R. Co. (Tex. Civ. App.) 262 S. W. 139.

The Texas cases in which it has been held that a mining partnership existed presented the elements "not only a joint ownership of the lease * * * but joint operation, sharing of profits, community of interests, and the mutual agency * * * in the management of the lease and exploration for oil." Wagner Supply Co. v. Bateman, 118 Tex. 499, 18 S.W.(2d) 1052, 1055; Munsey v. Mills & Garitty, 115 Tex. 469, 283 S. W. 754; Mayfield v. Key (Tex. Civ. App.) 260 S. W. 926; Indiahoma Ref. Co. v. Wood (Tex. Civ. App.) 255 S. W. 212.

■ That sharing in the net profits of a mining venture does not create the relation of mining partner, was held in the early Colorado case of Le Fevre v. Castagnio, 5 Colo. 564. The facts in that case, which present a close analogy to those at bar, are briefly summarized in the opinion as follows: "For the purpose of enabling Moffett to work his mine, the appellant agreed (upon the terms set forth) to furnish him with money or supplies to the amount of twenty-two hundred dollars. In consideration of these advances, Moffett agreed to pay Le Fevre one-fifth of all the profits derived from working the mine during the term of the lease. To secure Le Fevre in his advances, Moffett further agreed to deliver to him all ores taken out of the mine on the dump, until Le Fevre should be repaid all his advances." The court's holding is embodied in the following quotation: "The agreement in question, while it stipulates that the appellant is to be paid one-fifth of the profits, falls clearly within the exceptions to the rule, that interest in profits involves liability as a partner. Its leading recitals and terms show its true character to be a mere contract to advance money or supplies, not as an owner, but as a creditor, relying on the ores to repay his advances, and on the profits as a fund for a compensation in lieu of interest."

The holding in that case has been uniformly followed in mining partnership cases, so far as we have been able to discover. The following Texas cases are directly in point: Lowry Oil Corp. v. Bennett (Tex. Civ. App.) 16 S.W.(2d) 947; Leath v. Benton Abstract & Title Co. (Tex. Civ. App.) 9 S.W.(2d) 501 (error dis.).

■ In the law of partnership generally, the net profits rule, which at one time prevailed in England, has never been adopted in this state; although some expressions in Cochran v. Marmaduke, 60 Tex. 370, led to some confusion for a while, as to what exceptions to the rule should be applied. Fouke v. Brengle (Tex. Civ. App.) 51 S. W. 519; Rahl v. Parlin & Orendorff Co., 27 Tex. Civ. App. 72, 64 S. W. 1007. The decision in that case has been clarified by subsequent holdings of the Supreme Court, and it is now generally recognized in this state that to constitute a partnership there must be: "A community of interests, the common enterprise, its operation for the joint account, and a right in the owner of each interest to share as a principal in its profits as such, which under the established rule in this state is a recognized test of the relation." Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, 125, Ann. Cas. 1916E, 446.

Specifically, it has been held that the partnership relation does not exist where the interest in net profits is by way of compensation or remuneration for: (1) services as clerk or other employee (Goode v. McCartney, 10 Tex. 193); (2) commission as agent or broker (Buzard v. Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7); (3) rental for property, real or personal (Fink v. Brown [Tex. Com. App.] 215 S. W. 846); (4) interest on money loaned (Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S. W. 427, 430).

There is a very extensive case note upon the "effect of agreement to share profits to create a partnership" in 18 L. R. A. (N. S.) pages 963–1106. We quote from the author of the note at page 1019 of 18 L. R. A. (N.

S.): "The dissatisfaction with the net-profit rule of partnership liability, and the criticism to which it was subject, led the courts, not long after it was promulgated, to recognize a large class of cases to which it could not be applied without manifest injustice. The rule worked no hardship, in cases where there were actual partnerships, by joining capital with service in a common business for mutual profit; and these are many."

Under the heading, "The established exception to the net-profit rule—taking profits as compensation," the author lists the various excepted relations, with full citation of authorities.

Conclusions from the authorities are summarized on pages 1105, 1106 of 18 L. R. A. (N. S.), one of which we quote: "When the profit sharer is simply an agent or servant, one who furnishes property, a lender of money, or a mere creditor, who receives the profits as compensation for his services, or the use of his property or money, or in order to collect his debt, without more, he is not liable as a partner, and the presumption is overthrown."

As regards lending money there is perhaps the greatest diversity of view; especially so when the situation is complicated by the question of usury. It was with reference to a loan of money that the confusion arose over the holding in Cochran v. Marmaduke. But in Kelley Island Lime & Transport Co. v. Masterson the subject appears to have been clarified by the distinction pointed out in the following quotation (italics ours): "Masterson was not to receive his share of the profits *as compensation for the use of his money,* nor were Downey and Kelley to receive their share *as payment for services;* but each received the profits *as fruits of the joint enterprise*—that is, as profits—which made them partners."

■■ We are not here concerned, however, with the rule as it applies to one who furnishes or loans money. The transaction here, in so far as the evidence shows, was a loan of the casing, which was to be returned if the well was unproductive, and to be paid for if productive—clearly nothing more than the loan of a chattel with provision for sale upon a given contingency. The share in the net profits was by way of compensation for the use of the chattel. There was no joint venture, no community of interest, no sharing of profits as such.

We attach no importance to the fact that the contract in suit did not contain the recitation of ownership of the casing, which was embodied in the drilling contract. Both contracts were executed upon the same day by the same parties. That recitation conclusively shows knowledge of plaintiffs of the recited facts; which facts, if true (and the evidence conclusively shows them to be true), established the individual ownership of S. J.

Brendel in the casing, and eliminated it as a partnership asset, independently of any contractual stipulation to that effect. This holding disposes of plaintiffs' asserted claim of a mechanic's lien on the casing. Additionally, we think plaintiffs were clearly estopped from asserting such lien by the recitation in the contract of August 28, 1930, under which Wesner accepted $700 furnished by S. J. Brendel to pull the casing so that it might be put in condition to redeliver to Brendel as his individual property.

■ Upon the issue of the amount of recovery, the compensation provided in the contract was "the actual and necessary expenses incurred in removing the bailer and in cleaning the well, such actual expenses to be figured and estimated according to reasonable cost of the materials used and required, and according to what is a reasonable compensation for the labor and services performed."

Manifestly the burden rested upon plaintiffs to prove that each item in their claim met the test furnished in this quotation. Luling O. & G. Co. v. Edwards (Tex. Civ. App.) 32 S.W.(2d) 921.

■■ Plaintiffs offered a number of bills from various concerns, the items and dates of which are not shown by the record, also a large number of checks made payable to various parties covering the period from December 13, 1929, to September 11, 1930. Wesner testified that all of these items were incurred under the contract; that they were necessary and reasonable. His testimony and the checks and bills were the only evidence offered in support of plaintiffs' claim. He also testified that the work of cleaning the well was finished about the middle of January, 1930. Two affidavits were filed to fix the mechanic's lien, one April 8, 1930, and the other July 21, 1930. The former showed $3,183.77 to be due, the latter recited that "since that date (April 8, 1930) and under the terms of the contract mentioned and extensions thereof and oral renewals thereof there has accrued a total of $2404.29 in addition to the sum hereinabove mentioned" ($3,183.77). Boyce testified that "they (plaintiffs) told me it might cost $500.00 maybe $750.00, but not over $1000.00 at the outside to remove the bailer."

The rule that the uncorroborated testimony of an interested witness, although not controverted, does not conclusively establish a fact, is applicable, except when the nature of the testimony is such that it might readily be discredited, if not true, and there are no circumstances in evidence which would throw doubt or suspicion upon it. The circumstances above detailed do not bring the evidence within the exception to this rule.

■ Upon the issue of the relation between Boyce and S. J. Brendel, a number of letters written by Boyce to third parties were intro-

duced. These letters were clearly not admissible against S. J. Brendel as tending to show his relation with Boyce, or for any other purpose, until such relationship was shown by evidence aliunde as would authorize Boyce to bind S. J. Brendel by his declarations.

The trial court's judgment: (1) In so far as it establishes and forecloses as against appellants a mechanic's lien upon the casing is reversed, and judgment is here rendered in favor of appellants; (2) in so far as it awards personal recovery against S. J. Brendel is reversed and the cause remanded; (3) in all other respects is undisturbed.

In part reversed and rendered; in part reversed and remanded; in part undisturbed.