### ROSENTHAL v. ROSENTHAL et ux.

### No. 8447.

Court of Civil Appeals of Texas. Austin.
June 16, 1937.

H. A. Triesch and Fuchs & Fuchs, all of New Braunfels, for appellant.

Adolph Seidemann, of New Braunfels, for appellees.

McCLENDON, Chief Justice.

Hermann Rosenthal sued William Rosenthal and his wife, Lina, to set aside a deed from William to Lina and to subject the property therein conveyed to a judgment debt owing by William to Hermann, on the ground that the deed was executed in fraud of creditors. For brevity we are designating the parties by their given names. The appeal, which is by Hermann from an adverse judgment upon a directed verdict, presents the sole issue whether the evidence was sufficient to support a judgment in favor of Hermann.

The material evidence, substantially stated, follows:

Hermann and William are brothers, and two of five children of Doretta and Christian Rosenthal, both of whom died intestate, the former in 1930 and the latter in 1934. May 26, 1931, William was served with citation in a suit brought against him by Hermann upon a promissory note. Judgment (that in issue) was rendered September 8, 1931, in favor of Hermann against William for $3,829.88 and costs. An abstract of this judgment was promptly filed and indexed in Comal county. On the day William was served with citation in this suit (May 26, 1931), he made two conveyances to Lina. In the first (that here in issue), for a recited cash consideration of $1,700, he conveyed his ⅕ interest in his mother's estate, and his expectancy in his father's estate. In the second he conveyed residence property in New Braunfels "in consideration of love and affection," the deed reciting that the property was the homestead of William and Lina.

At the time these conveyances were made William owned a vendor's lien note which was a second lien upon 112 acres in Caldwell county, which tract he had traded for 73 acres in Comal county, against which latter was a vendor's lien note which he had executed in the trade. There had been some negotiation between William and Hermann regarding settlement of the debt sued on, in which William had offered Hermann the note on the Caldwell county land, the 73 acres, and the New Braunfels residence property. Hermann testified he declined these offers because there was no equity either in the Caldwell county note security or in the 73 acres, and he was unwilling to allow William $3,000 which he demanded for the residence property, but offered to take it at $2,000, which he claimed was all it was worth.

William testified that the real consideration for the first deed was $1,700 which he owed Lina. The substance of this testimony will be set out later.

The directed verdict was predicated upon the theory that the evidence conclusively showed that William was indebted to his wife in the sum of $1,700, and since the property conveyed in the first deed did not exceed in value that amount, the conveyance could not be set aside. This upon the correct proposition of law that a debtor has a right to prefer one creditor over another.

Upon this issue Hermann asserts that the evidence did not establish conclusively a bona fide indebtedness to Lina; nor the amount of such debt, if any; nor that the conveyance was a bona fide transaction in settlement thereof. In this we agree. All the evidence upon this subject came from William, an adverse party and interested witness. The applicable rule of evidence is stated and illustrated in the following cases: Stefka v. Lawrence (Tex.Civ.App.) 288 S.W. 1092, 1093; Luling Oil & Gas Co. v. Edwards (Tex.Civ. App.) 32 S.W.(2d) 921; and Gardner v. Wesner (Tex.Civ.App.) 55 S.W.(2d) 1104, 1107. We quote from the last-cited case: "The rule that the uncorroborated testimony of an interested witness, although not controverted, does not conclusively establish a fact, is applicable, except when the nature of the testimony is such that it might readily be discredited, if not true, and there are no' circumstances in evidence which would throw doubt or suspicion upon it."

This rule was applied in Stefka v. Lawrence to a state of facts closely analogous to those at bar. The limitations of the rule are illustrated in the Edwards Case, in which it was held that where the uncorroborated testimony of an interested witness is of such character that it might readily be disproved if untrue, it will be held conclusive if the adverse party offers no disparaging or discrediting proof.

William's testimony upon this subject was in substance: He and Lina were married in 1916. He then owned the 112 acres in Caldwell county, subject to an encumbrance of about $2,000. They lived on that place until 1929, when they moved to the 73 acres. Lina's mother died in 1924; her father died later, but the date was not given. William testified Lina got $1,700 from her father's and mother's estates. His testimony upon this point, however, is unsatisfactory and in some respects contradictory. He testified in one place that she got $1,000 in cash from her mother's estate. In another, "I stated that my wife got this $1000 in cash. It was the same as cash; we took this car in for the amount, and it was just the same as cash. We used this car for a family car for a little while, and then we sold it right away." What it brought at the sale he did not state. As to his getting the money from his wife, the following excerpts from his testimony are illustrative: "I never kept any dates when I borrowed this money from her. I don't suppose anybody else was present when I got that money; I never got it all at one time; I got it from time to time." "I can't tell you approximately when I got the money; I didn't get it all at one time, but just from time to time." "I did not give her a note for it. We did not keep a separate account of her money and mine. I was not to pay it back at any fixed time, just whenever she might need it." "I was to pay this money that I borrowed from her whenever she needed it, I was to pay her back. We never agreed on any rate of interest, and no date was set for me to pay it back, except that I was to pay it whenever she needed it. It was not an on or before transaction." "I have in my pleadings that I owed my wife $1700; that is what we figured it. I don't know what date it was that the total amounted to that sum. We just figured it as near as we could." "My wife used to be sick a lot before we married, and when I borrowed this money from her I was to pay it back to her whenever she got sick and needed it." To the question, "But she needed it on June 26th, 1931, at the time you deeded her the ⅕ interest in your parent's estate?" there was "No audible answer."

Comment upon this character of testimony is unnecessary. Coming as it did from one of the parties and relating as it did to transactions solely within the knowledge of the parties, it was manifestly not of that quality as to require its acceptance as conclusive proof, even though not contradicted by any other witnesses. In addition to the above authorities, see 17 Tex. Jur., pp. 893–904, §§ 405 and 406, where the subject is treated at length.

Appellees urge that appellant is estopped to question the validity of the first deed upon two grounds:

1. Hermann joined in a power of attorney with his other brothers and sisters and Lina, in which it was recited that the property conveyed in the first deed belonged to Lina in her own separate right. No action was taken under this power of attorney, and Lina afterwards revoked it. Hermann testified that the purpose of the power of attorney was for convenience in managing the estate. As between Hermann and any one claiming under the power of attorney, clearly Hermann would have been estopped to deny the authority of the attorney in fact within the powers granted in the power of attorney. As between the parties to the instrument, however, there was no estoppel. The recitations might be admissible as an admission against interest. But with the explanation given by Hermann, it was not conclusive against him.

2. Hermann released his abstract of judgment lien against the 73-acre tract in favor of the holder of the notes against it. It was shown that the holder of the notes was about to sue William personally thereon and to foreclose the lien and join Hermann in the suit. The holder agreed to take a conveyance of the land from William in satisfaction of the notes, provided Hermann would release his lien. This arrangement was effected. There was evidence also that there was no realizable equity in the land above the amount of the notes. There was clearly no estoppel in releasing the judgment lien under the circumstances.

Appellant further urges that even if the $1,700 indebtedness be treated as bona fide, the transaction was fraudulent in that the two deeds constituted but a single transaction, and that Lina got property conveyed by the two deeds far in excess of the debt. In this connection appellant contends that the evidence conclusively shows that at the time of the two conveyances the homestead of William and Lina was the 73-acre tract and not the New Braunfels residence property.

Upon the issue of homestead, the evidence is not altogether clear. It would probably support a verdict either way. However, regardless of this issue, we overrule appellant's contention. While the evidence shows that both deeds were executed at the same time and were intended no doubt to place the property beyond the reach of Hermann, it is clear from the evidence that the consideration for each deed was separate and distinct. The first deed was executed in .satisfaction of an asserted debt of $1,700; the second was a pure gift and was sought to be upheld upon the theory that the property was homestead. If in fact it was homestead, the conveyance was not fraudulent as to creditors because the property conveyed was not subject to their debts. If it was not homestead it was void, so made by statute (article 3997), if William's other property in Texas subject to execution was not sufficient to pay his debts; and void in any event if made with intent to hinder, delay, or defraud creditors. See Taylor v. Callahan (Tex.Civ.App.) 83 S.W.(2d) 1072 (error dis.)    .

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.