**HEARRELL et al. v. MOSELEY.**

No. 5995.

Court of Civil Appeals of Texas. Texarkana.

Dec. 3, 1942.

Rehearing Denied Dec. 10, 1942.

Hurst, Leak & Burke, of Longview, for appellants.

Bramlette, Levy & Bolton, of Longview, for appellee.

HALL, Justice.

This cause was instituted by appellee against appellant and others not parties to this appeal for partition of the mineral interest in a small triangular strip of land containing about one · acre, a part of the Castleberry Survey in Gregg County. Appellant and appellee own 49/128 and 65/128, respectively, undivided mineral interest in this tract. A 14/128 overriding royalty interest is· owned by the law firm of Hurst, Leak and Burke, but by stipulation of the parties it is not in controversy here. The fee of said land is owned by R. M. Wood. Trial to the court without a jury resulted in a judgment decreeing the mineral estate incapable of partition in kind, ordering it sold by a receiver and proceeds divided between appellant and appellee according to their respective interests. The overriding royalty of Hurst, Leak and Burke was by said judgment left undisturbed. It is the contention of appellant, Mrs. Hearrell, and so alleged by her, that in the latter part of 1936 she and R. M. Wood entered into an agreement, she acting through her son, Jack Hearrell, whereby she would obtain a drilling permit for an oil well on said land "and for the development and operation thereof with R. M. Wood." That on December 26, 1936, a permit was obtained by appellant's son, Jack Hearrell, and R. M. Wood and shortly thereafter an oil well was drilled on said land which has produced continuously since. That on April 8, 1941, appellee, J. A. R. Moseley, Jr., purchased the interest of R. M. Wood and for several

months paid appellant ½ the operating expenses of said well. To avoid a partition of said property by appellee, appellant made a tender both in her pleadings and in open court to Moseley of the amount of purchase money expended by him for the Wood interest. Appellant pleaded further that there is no necessity for partition for the reason that appellee is receiving payments for oil produced from said well from the Magnolia Petroleum Company based upon the interest purchased by him. That it would be inequitable to partition the property by sale because of the increased income tax the appellant would be forced to pay. Appellant further averred: " * * * that the plaintiff is not entitled to have said land partitioned because said properties at the time he purchased his interest in said properties and ever since was and has been duly operated under an operation agreement with the said R. M. Wood, all of which was well known to said purchaser and that before and at the time of said purchase the said R. M. Wood advised the said plaintiff of the condition of said properties, and further say that the defendant, Mrs. Lola Hearrell, is a co-tenant in possession under a conveyance and contract for the operation of said properties, all of which was a part of the original consideration for obtaining the permit and developing said property, and that this plaintiff is not entitled at his whim and caprice to use this Honorable Court for the purpose of perpetrating a legal fraud upon these defendants by permitting them to come to this Honorable Court to force a sale of these defendants' properties which they are not desirous of selling and which is being prudently managed and operated by said defendants." It is the contention of appellee, concurred in by the trial court, that partition in kind or by sale is, under Title 104, R.C.S., Vernon's Ann.Civ.St. art. 6082 et seq., "a matter of right."

■■ Appellant's 5th point is: "The property at the time of the purchase by plaintiff (appellee) Moseley being operated by defendant (appellant) Hearrell and still being operated under a contract it was error for the court to decree a partition by sale." As said before, the land is a narrow, three-cornered strip upon which is located one producing oil well. This tract of land was recovered by R. M. Wood by judgment of the district court dated March 3, 1941, in which it was stipulated that only one well should be drilled upon same.

Hurst, Leak and Burke, attorneys represented Wood in the litigation culminating in the recovery of this land, for which services R. M. Wood assigned to them a 14/128 overriding royalty interest in the minerals. R. M. Wood testified that he conveyed a 49/128 undivided mineral interest in this tract of land to Mrs. Lola Hearrell, appellant, "for the financing or the obtaining of the premises, survey work and development of this tract." It is undisputed that Jack Hearrell, agent of appellant, in the latter part of 1936 aided and assisted R. M. Wood in securing a drilling permit for one well upon this land, and drilled thereon a producing oil well in the early part of 1937. This well has continuously since produced the allowable of oil permitted under the regulations of the Railroad Commission. It is also undisputed that Jack Hearrell, as agent of Lola Hearrell, his mother, operated this well from its completion to the present under a verbal agreement with R. M. Wood whereby Wood was to pay half the operating expenses. This agreement was in effect on April 8, 1941, when appellee, Moseley, purchased Wood's mineral interest in said land and on August 13, 1941, when Moseley instituted this suit for partition. R. M. Wood testified: "I told them he (Jack Hearrell) drilled the well and operated it, and had had full charge of the operation ever since from the beginning. Q. You didn't say anything else to them then about the operation except what you just testified? A. No, I didn't, except what I was paying him. Q. You didn't require it as a proposition for the selling that that arrangement should continue, did you? A. No, I sold it like I used to sell cotton, just take it as it is, don't you see?"

These undisputed facts based upon the pleadings of appellant, set out above in our opinion, constituted appellant, Mrs. Hearrell, and R. M. Wood mining partners and their joint venture a mining partnership. They were tenants in common in respect to the mineral interest in said land and by agreement between them Jack Hearrell, as agent for appellant, was operating the only oil well thereon for their mutual benefit. Munsey v. Mills & Garrity, 115 Tex. 469, 283 S.W. 754, and authorities there cited. In Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052, 1055, opinion by Chief Justice Cureton, it is said: "The rule is that a mining partnership arises by operation of law where

co-owners work a mine. Bateman was one of the co-owners of this lease, and while his associates supplied material, he did the labor and the work of operating the mining enterprise and making the well produce oil. This under the authorities makes him a partner with Roberts and associates. * * * The plain facts are that the partnership was engaged in a mining .enterprise, and Bateman became the purchaser of a one-fourth interest therein, paying for the same, however, in labor. As such he became a mining partner, subject to the liabilities and entitled to the rights and privileges of such relationship."

See also Gardner v. Wesner, Tex.Civ. App., 55 S.W.2d 1104. We recognize that the trial court found in his findings of fact that the oral understanding between Mrs. Lola Hearrell and R. M. Wood with respect to her operation of the well on this property was not to extend beyond the joint ownership of her and R. M. Wood. This finding, in our opinion clearly has reference to the agreement between the parties for Mrs. Hearrell to operate the well and does not affect their mutual interest and ownership of the well. The purchase by appellee, Moseley, of Wood's interest in the partnership property would in no wise dissolve the partnership existing between Wood and appellant. Moseley simply became a partner in the mining venture in the place of Wood. Munsey v. Mills & Garrity, supra; 40 C.J. p. 1149 Sec. 804; Summers Oil & Gas, Perm.Ed., Vol. 4, p. 170 § 733. In such circumstances, the property here in controversy being impressed with a mining partnership, with its resultant rights and liabilities, appellee could not force a partition, as a matter of right, where it is shown that the exercise of said right would be inequitable to the other partner. Nor may one mining partner work a dissolution of a mining partnership by a decree of sale of the partnership property without alleging and showing good grounds therefor. 40 C.J. p. 1153, Sec. 810; Summers Oil & Gas, Perm.Ed., Vol. 4, p. 173, § 734. In supplemental findings of fact found by the trial court, "the court found, as a matter of fact, that no controversy existed between the plaintiff and the defendants in the manner and method of the operation of the property in question" and in the trial court's last conclusion of law he found: "Although the Court is of the opinion that it is apparently inequitable to require one co-owner of property to sell in order to effect a parti-tion, yet the court concludes as a matter of law that he is bound by Title 104, Revised. Civil Statutes of this State."

From the above finding and conclusion it is clear that the trial court was of the opinion that under R.C.S. Title 104 partition of partnership property either in kind or by sale exists as a matter of right. We concur in this conclusion when it relates to the status of an ordinary partnership or tenants in common. But here, as shown above, the undisputed facts established a joint venture or partnership between the parties with respect to the ownership and operation of the mineral estate here involved. There is no finding in the record by the trial court under the facts of this case as to whether it would be inequitable to appellant to partition the property in controversy by sale, or whether there existed good grounds for said partition. This being true, we have reached the conclusion that the ends of justice will best be subserved by a retrial of this case upon the theory advanced in this opinion.

The judgment is reversed and the cause remanded.