### Sabine Tram Company v. T. Bancroft & Sons.

Delivered April 28, 1897.

**1. Corporation—Partnership With Individuals.**

A corporation chartered under the general laws of Texas is not authorized to form a partnership with individuals, even though the business to be transacted by such partnership is of the character authorized by the corporation's charter.

**2. Same—Statute Does Not Authorize Such Partnership.**

The power given to corporations by article 651 (subdivision 7), Revised Statutes, 1895, "to enter into any obligation or contract essential to the transaction of its authorized business," does not confer the right to enter into contracts contrary to public policy, such as a partnership with individuals.

**3. Illegal Contract—Recovery for Future Profits Denied.**

A corporation can not recover, as damages for the breach of an illegal contract for partnership between it and individuals, the probable profits which might have been realized had the partnership been continued until the expiration of the agreed time, the entire contract being vitiated by the illegality.

APPEAL from Orange. Tried below before Hon. STEPHEN P. WEST.

*Greer & Greer* and *O'Brien, Bordages & O'Brien,* for appellant.

1. Under the Texas statute in force when this contract was made (1 Sayles' Civil Statutes, article 575, subdivision 7) private corporations were authorized "to enter into any obligation or contract essential to

the transaction of its authorized business." ˙ Rev. Stats., art. 651, subdiv. 7; Indianola v. Railway, 56 Texas, 594.

2. It is a presumption of law, that where the undertaking is not in express violation of law, the corporation in making a contract is within its powers until the contrary is made to appear, and the burden of showing the contract is. ultra vires rests upon the defendants. 5 Thomp. on Corp., sec. 5967; Railway v. McCarthy, 96 U. S., 267.

3. If that part of the contract as to partnership was ultra vires, still that portion of the contract for the sale of the logs, and the obligation of the defendants to take the same at their market price, was not unlawful, and it being strictly within plaintiff's corporate powers to cut, float, and deliver the logs to defendants, their refusal to accept them was an actionable breach of the contract, in that, that feature of the contract was complete and distinct within itself, and did not depend on the terms and conditions of the partnership features of the contract. 5 Thomp. Law of Corp., secs. 6024, 6026.

*Ford, Martin & Jones,* for appellees.—1. A private corporation can not enter into a partnership with another corporation, or with natural persons, unless there is express authority in its charter authorizing it to form such partnership, and the principle underlying this inhibition is that the law operating through the charter has devolved the management of the corporate affairs upon certain particular officers, and that the responsibility can not be shifted from them to persons not members of the corporation, as would be the case if the business should become merged in a partnership enterprise. Mora. on Priv. Corp., sec. 220; 2 Beach on Priv. Corp., secs. 842, 843; Mills v. Upton, 10 Gray, 582; Bank v. Ogden, 29 Ill., 248; Canal Co. v. Bank, 7 Wend., 412.

2. Article 575, Sayles' Civil Statutes, contains an enumeration of the powers conferred upon private corporations, but subdivision 7 confers no greater power than would naturally be inherent in such corporation in the absence of the statute, and the "obligation or contract" contemplated by the statute is such as would be in harmony with the objects of the corporate body and not subversive of its existence, as would be a partnership contract; and besides, if such power is conferred as contended for by appellant, it is only by implication and not by express authority.

3. Where the exercise of a corporate power can only be done by express authority contained in its charter, there is no presumption of the right to exercise that power, and in such case the petition must contain an allegation that such express authority has been given. Bond v. Terrell Mfg. Co., 82 Texas, 310, and cases cited; Mora. on Priv. Corp., sec. 27.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellant, a private corporation, to recover damages incurred by reason of the breach

of a certain contract entered into between it and appellees. The contract was as follows:

"*State of Texas, County of Orange* — Articles of agreement between T. Bancroft & Sons, a partnership firm composed of Thomas Bancroft, A. J. Bancroft, E. W. Bancroft, and George W. Bancroft, of the above county and State, and the Sabine Tram Company, a private corporation, incorporated under the laws of Texas, whose office is in the city of Orange, Texas; that the said parties have agreed and by these presents do agree to associate themselves as copartners in the business of manufacturing and selling pine lumber, which said business is to be conducted in the city of Orange, Texas, at the steam sawmill of T. Bancroft & Sons, which said partnership is to exist for a period of three years next ensuing from the 8th day of January, 1893. The name and style of said partnership shall be T. Bancroft, Sons & Co. For the purpose aforesaid, the Sabine Tram Company agrees, and by these presents binds itself, to furnish for the benefit of said partnership, at the usual scaling place of the Sabine Tram Company, at Orange, Texas, sufficient pine logs of twelve inches in diameter and over twelve inches in diameter to operate and run the steam sawmill of T. Bancroft & Sons, as said logs may be needed during the continuance of this partnership, said logs to be cut in lengths as required by the lumber market as near as practicable, and at the market price for said pine logs at Orange, Texas, until this partnership expires, and said pine logs are to be measured by the rule of scale of log measurement at Orange, Texas; provided that in the event of such  *  *  *  high water or low water in the Sabine River that said logs can not be conveyed to Orange by said Sabine River, the said Sabine Tram Company will be excused during said time from furnishing logs under this contract; and provided further, that in this event the said firm of T. Bancroft & Sons shall be permitted to use their said steam sawmill as to them may seem best, and for their own profit; and it is hereby specially agreed that T. Bancroft & Sons shall have privilege to use their steam sawmill at a time deemed proper, for the purpose of sawing up the cypress timber now in the river, belonging to them, at their mill for their own profit, and be allowed to put their cypress shingles and lumber manufactured from the said cypress timber on the mill yard at Orange, Texas, whereby it will not interfere with the pine lumber on the mill yard belonging to T. Bancroft, Sons & Co., the said cypress shingles and lumber to remain on the yard at the mill until disposed of by T. Bancroft & Sons.

"The said firm of T. Bancroft & Sons, for the purpose of this partnership, agree and bind themselves to furnish for the use and benefit of this partnership the use of their steam sawmill, yards, switches, booms, and everything connected with and used in and about their steam sawmill plant at Orange, Texas, for the purpose of sawing the said pine logs to be furnished for this partnership into lumber, except during the time required to saw up their cypress timber, before mentioned, and that the

said T. Bancroft & Sons shall operate and manage said mill in the sawing of lumber during the continuance of this partnership. That with the privilege of the Sabine Tram Company this partnership can buy pine logs from outside parties, that may be offered for sale in this market.

"The Sabine Tram Company shall suggest and appoint a general business manager, who shall sell all lumber manufactured by this partnership to the best interests thereof, and who shall have general control of the finances of the same, and who shall apply the proceeds of said lumber as follows: First, to the payment of the cost and expenses of operating and running said mill of T. Bancroft & Sons, and to include all expenses incurred in manufacturing and selling said lumber and the cost of insurance on same. The insurance on lumber to be carried by the partnership to the full extent of valuation allowed by the insurance companies. The insurance on the mill to be carried by T. Bancroft & Sons, and the cost of same to be paid by them. Second, to the payment for logs bought by the said partnership and used and sawed in manufacturing said lumber, and then the profits arising from the sale of said lumber manufactured by this partnership shall be divided, two-thirds to T. Bancroft & Sons and one-third to the Sabine Tram Company, and all moneyed profits shall be divided as above specified at the end of each year during the continuance of this partnership.

"That the Sabine Tram Company shall leave $20,000 in the partnership business as a working capital, and they to receive pay for logs each month, half cash and half by ninety-day note given by T. Bancroft, Sons & Co., bearing interest at 8 per cent per annum until there is sufficient funds on hand to pay for logs in cash each month. That all funds arising from this partnership shall be placed in the hands of a treasurer elected by the partnership. That this partnership may be continued at the expiration of this agreement by mutual consent of all parties concerned herein, and under the terms of this agreement; and likewise may be dissolved at any time by the consent of all the parties hereto. That at the end of this partnership the parties hereto shall have a reasonable time to dispose of the lumber remaining on hand, and which shall remain on the mill yard of T. Bancroft & Sons at Orange, Texas, until so disposed of, and that the Sabine Tram Company shall receive their investment of $20,000, put in the partnership business as a working capital, at the end of the copartnership, in lawful United States money.

"Witness our hands, and signed in duplicate, this 19th day of September, A. D. 1892."

It was alleged that on or about November 1, 1893, appellees refused to operate the mill or to receive any logs which appellant could have furnished, and on December 23, 1893, withdrew from the contract. The damages alleged are the profits that would have accrued to appellant by sale of the logs from November 1, 1893, until the time fixed for the termination of the contract. There was no allegation that the charter authorized the corporation to enter into partnership, the only allegation

being, that it "was authorized by the terms of its charter to erect, operate, and maintain sawmills and log booms in Orange, Newton, Jasper, and adjoining counties in Texas, to manufacture and sell lumber." A general demurrer was sustained to the petition.

The contract is undoubtedly one of partnership, and the question is presented, can a corporation created under the laws of Texas enter into a partnership with individuals?

The general rule is well established that a corporation can not enter into partnership with other corporations or individuals. Whittenton Mills v. Upton, 10 Gray, 582; Railway v. Smith, 76 Ala., 572; 52 Am. Dec., 353; Davis v. Railway, 131 Mass., 259; 1 Mora. on Priv. Corp., sec. 421; 6 Thomp. on Corp., secs. 5838, 6026; Hirschl on Corp., 113, 114.

In Whittenton Mills v. Upton, above, the Supreme Court of Massachusetts says: "There is one obvious and important distinction between such a society as this charter creates and that of a partnership. An act of the corporation, done either by direct vote or by agents authorized for the purpose, is the manifestation of the collected will of the society. No member of the corporation, as such, can bind the society. In a partnership each member binds the society as a principal. If, then, this corporation may enter into partnership with an individual, there would be two principals, the legal person and the natural person, each having, within the scope of the society's business, full authority to manage its concerns, including even the disposition of its property."

In Massachusetts, as in Texas, it was provided that the directors should have the management and control of the affairs of the corporation, and the court proceeds: "It is plain that the provisions of this section can not be carried into effect where a partnership exists. The partner may manage and conduct the business of the corporation and bind it by its acts. In so doing he does not act as an officer or agent of the corporation by authority received from it, but as a principal in a society in which all are equals, and each capable of binding the society by the act of its individual will."

A corporation has no more powers than are granted expressly or by implication from its charter, which is dependent upon the law of the State authorizing the creation of corporations, and prescribing their powers, duties, and liabilities. To permit corporations to enter into contracts which would practically destroy their identity, and create other managers and agents for them than those provided by law, would be contrary to public policy and subversive of the laws of their creation. The law authorizing the organization of corporations in Texas details the objects for which they may be created, gives the limit of their duration, makes a specific grant of their powers, and prescribes their duties, naming the officers through and by whom they shall be controlled and governed, and provides that no corporation "shall employ its stock, means, assets, or other property; directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." There is no provision in the statute that would give a corporation

the authority to hide itself in a partnership, obscure its identity, shift its responsibilities, place its management in the hands of persons foreign to the law of its creation, and cripple its power to perform the duties incumbent upon it. It is true that in prescribing the powers of corporations, in subdivision 7, article 651, the power is given, "to enter into any obligation or contract essential to the transaction of its authorized business," but that power does not confer the right to enter into contracts contrary to public policy and inconsistent with the object of the creation of the corporation. The contracts into which it may enter are those "essential to the transaction of its authorized business." Not all contracts that may advance its interests or add to its prosperity or wealth—for contracts entirely foreign to the end of its creation might accomplish those things—but to enter into all contracts necessary to carry on the business and further the enterprise for which it was chartered, by the means and machinery provided by the law of its existence. As said in an English case (11 C. B., 811), and cited with approval by the Supreme Court of the United States: "What additional power do they acquire from the fact that the undertaking may in some way benefit their line? Whatever be the object or prospect of success, they are still but a corporation for the purpose of making and maintaining the Eastern Counties Railway; and if they can not embark in new trades because they have only a limited authority, for the same reason they can do nothing not authorized by their act and not within the scope of their authority." Thomas v. Railway, 101 U. S., 82.

We conclude that the partnership formed between appellant and appellees was unauthorized by the statute and contrary to public policy, and while those parts of the contract which have been executed should be enforced between the parties, no enforcement of the unexecuted part of it can be properly demanded. Parish v. Wheeler, 22 N. Y., 494; Thomas v. Railway, above cited. The suit in this case does not relate to any matters that arose between the parties before the dissolution of the illegal partnership, but the cause of action is the probable profits that would have accrued to appellant had the partnership been continued. The suit is to recover damages for nonperformance of a contract unauthorized by law and obnoxious to public policy. The damages claimed arose from a failure to further prosecute an illegal enterprise. The law does not wield its power to prevent persons or corporations from withdrawing from illegal combinations, but rather encourages repentance and reform, even though at a late hour. When the illegal contract has ended by the acts of either party to it, future consequences resulting from the infraction will not subject the party to a suit for damages, but the parties will only be held responsible for those parts of the contract already executed. "The test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case." Swan v. Scott, 11 Serg. & R. (Pa.), 155, cited by Thomp. on Corp., sec. 6024. Applying

this test to appellant's case, it must necessarily fall through, because it is based entirely upon the illegal contract of partnership.

The proposition is urged, that although the contract of partnership may have been invalid, still that part of it in regard to the delivery of the logs by appellant was legal and should be enforced. The proposition can not be entertained. The delivery of the logs grew out of and is inseparably bound to the invalid contract of partnership, and the whole contract was vitiated by the illegality of the partnership. Courts will not analyze a vicious and illegal contract, which as a whole is void, and enforce a part which, independent of its vicious company and surroundings, would be legal and valid, but will decline to enforce any part of it. It would be unconscionable to validate the part of the contract relating to the logs when there would have been no such contract without the partnership element entering into it. A different case might be presented if the suit were for logs furnished before the breach of the contract.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.