## HUMBLE OIL & REFINING CO. v. LULING OIL & GAS CO.

### No. 11591.

Court of Civil Appeals of Texas. Galveston. March 1, 1944.

Rehearing Denied April 20, 1944.

On Motion for Entry of Final Judgment March 8, 1945.

On Motion for Rehearing April 12, 1945. Rehearing Denied May 2, 1945.

W. J. Howard and K. W. Gilmore, both of Houston (Rex G. Baker and R. E. Seagler, both of Houston, of counsel), for appellant.

George Cannon, of San Antonio, and E. H. Suhr, Chester M. Fulton, and Chas. W. Bell, all of Houston (Fulbright, Crooker, Freeman & Bates and Bryan, Suhn & Bering, all of Houston, of counsel), for appellee.

GRAVES, Justice.

This suit was filed by the appellee, Luling Oil & Gas Company, against Humble Oil & Refining Company, appellant, on the 13th day of November, 1940. The suit was in the nature of one for an accounting for the proceeds of oil and gas alleged to have been produced by appellant from several leases in Caldwell County, Tex., located in what is known as the Salt Flats Oil Field, under a written contract between the appellant and appellee, a copy of which was attached to appellee's petition and made a part of same. It was stipulated in court on this trial, on October 21 of 1942, that both parties recognized this contract as being then a valid, subsisting agreement· between them, and appellee, without seeking to cancel, reform, or modify it, sued on the contract for over $400,000 out of such proceeds alleged—in extended detail—to have been received and appropriated to its own benefit by appellant from appellee's rightful share thereof.

In answer, the appellant pleaded:

1. General denial.

2. A special denial, under oath, of any partnership between appellant and appellee.

3. A stated, settled, paid account in full.

4. The specific terms of such contract under which, it admitted, the parties were so still operating, declaring its full compliance with all of them when correctly construed and applied.

5. The two and four year statutes of limitations, respectively, as applied to the various claims sued on.

6. Laches, estoppel, and stale demand, as against all the items thereof.

On the conclusion of the evidence, both parties moved for peremptory instructions, which motions the court overruled.

The court submitted to the jury issues on the following claims asserted by appellee:

1. The issue involving the Joe D. Hughes claim.

2. The issue involving charges to "District Expenses".

3. The issue involving the 2% and 1% tank-table strappage deductions made by the pipe-line common carrier.

The issues involving the Joe D. Hughes claim and the charges for "District Expenses" were answered in favor of appellant, and, on the jury's verdict, judgment was rendered in favor of appellant thereon.

On the issue of tank-table strappage deductions made by the common carrier pipe-line (Humble Pipeline Company) running the oil, the court ignored the findings of the jury, and rendered judgment for the deductions that had been made during the year 1929 in favor of appellee in the sum of $25,198.52, as principal, and $19,654.85, as interest, totaling $44,853.37.

The court also withdrew them from the consideration of the jury and rendered judgment in favor of appellee and against the appellant in the aggregate sum of $82,973.93, upon the following detailed claims:

1. One-half of the alleged profits made by the appellant on fresh water furnished by it and charged to the joint account of appellee and appellant in the principal sum of $12,200.05, and interest of $8,871.95.

2. One-half of the alleged profit made by the appellant on "Breaxit" and lubricating oil, manufactured and furnished by it and charged to the joint account, in the principal sum of $9,300, and interest thereon of $6,352.92.

3. One-half of cash discounts received by the appellant and allocable to equipment and supplies, purchased by it and used on the jointly owned properties and not credited to the joint account, in the principal sum of $9,263.12, together with interest of $6,152.87.

4. One-half of quantity or volume purchase-discounts, received by appellant and allocable to materials and equipment purchased by appellant and used on the jointly owned property and not credited to the joint account, in the sum of $1,113.71, and interest thereon of $835.53.

5. One-half of the alleged profits, made and received by appellant on its wholly owned trucks and tractors, which were used in the operation of the jointly owned properties and charged at the prevailing rate per hour, and not credited to the joint account, in the principal sum of $8,603.44, and interest of $5,012.98.

6. One-half of overassessment by appellant and charged to appellee, by reason of salt water disposal in the sum of $6,419.68, with interest accrued of $4,622.17.

7. One-half of the amount of cost of transporting second-hand material from the jointly owned leases to other leases, or locations, where such second-hand material was sold and was to be delivered, in the sum of $3,009.85, and interest of $1,215.66.

The overall judgment in appellee's favor was, therefore, $127,827.30, all its other claims having been denied.

As indicated, the appellant, while admitting itself bound by the terms of the contract, and stipulating both that there had been no cessation of the dealings between the parties thereunder and that it was still being operated under by both sides at the time of the trial, interposed the bar of the 4-year statute of limitation, R.S. Article 5527, to all the sued-upon claims of the appellee, which by specific averment represented "appellee's one-half interest in the net profits received from the sale of oil during said period from January 8, 1929, to September 1, 1940," especially those enumerated ones for which the court so gave it judgment.

In answer to that plea, alleging that a partnership relation existed between the two parties by virtue of their contract, the appellee adduced subdivision 3 of R.S. article 5527, as rendering appellant's limitation claim without merit, reading as follows: "3. Actions by one partner against his co-partner for a settlement of the partnership accounts, or upon mutual and current accounts concerning the trade of merchandise between merchant and merchant, their factors or agents; and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together. Acts 1841, p. 163; P.D. 4604; G.L. vol. 2, p. 627."

The trial court sustained that theory, holding that the 4-year limitation statute did not so bar any of the claims sued upon by the appellee, on the ground that the relationship between the parties constituted a partnership, hence the quoted subdivision made it inapplicable.

■ Considering the cause as a whole, this court is unable to approve that disposal of appellant's pleas of limitation, concluding, rather, that quoted subdivision 3 of article 5527 did not rule the distinctive facts here presented; and that, on the contrary, by the express terms of the continuing contract under which these parties were so operating, all of appellee's claims, which became due prior to November 13 of 1936, were barred by R.S. art. 5527 that appellant so invoked, in as much as this suit thereon was not filed until November 13 of 1940—more than four years thereafter.

Since such question of limitation thus lies at the base of the whole controversy, allegedly permeating every item sued upon, it would obviously be beyond the requirements to go into the vast agenda of other questions presented in the briefs, until it is first disposed of.

It is also considered to be unnecessary to explore the much discussed subsidiary inquiries of whether or not the relationship between the parties under the contract in suit was that of a partnership of any character, or a joint adventure, or whether appellant was an independent contractor; because, as this court reads and construes that instrument, it expressly provides upon its face that a cause of action did accrue to appellee for each and all of the items it herein sued for and recovered upon, so long as their dealings thereunder had not ceased, in these provisions:

(1) It required the appellant to furnish the appellee, within one month after the close of each calendar month, a statement of investments and expenses incurred, also of credits and receipts during that month, further specifying that all exceptions to such statements had to be made within 45 days after their receipt, otherwise they should be conclusively considered to be correct, to-wit: "Within one month after the close of each calendar month Second Party (Humble) shall furnish to First Party (Luling) a statement of investment and expenses incurred and credited and receipts during such calendar month. Any exceptions to the statement as rendered by Second Party must be made by First Party within forty-five days from the receipt of same; and if no exception is made within such time, then such statement shall be conclusively considered as correct. If such statement is incorrect, First Party shall be credited for any excess payment made, and shall be debited for any excess credit allowed."

(2) It then also fixed, specifically, the agreed time for the payment of all sums accruing from the appellant to the appellee, as follows: "Second party shall have exclusive charge and control of all the oil and gas produced from said premises and accruing to the parties hereto and shall have the exclusive right to market same. All proceeds received from the sale of the oil and gas produced and saved from the said premises and pertaining to the working interest shall be first credited to joint account; and if any excess remains after the payment of all charges to joint account then accrued, Second party shall pay the First party its one-half of the sums remaining."

It thus became appellant's clearly stipulated obligation, upon the recurring dates of all such months, to pay to appellee its contractual one-half of the amounts by which the receipts from production up to such times exceeded the expenses thereof; that is, upon appellant's failure to so make such payments, the cause of action of the appellee to recover them then arose, and could have been at that time sued upon by it.

Since this suit, as the statement supra has indicated, was only to recover for operations under the contract between the dates of January 8, 1929, when the first well drilled came in, and September 1, 1940, and, by the stipulations, there had never been any cessation of dealings between them thereunder, subdivision 3, upon which the trial court overruled appellant's pleas of limitation, seems to this court to have clearly been inapplicable; this for the reason that the contract itself validly fixed between the parties a definite time for the accrual of the cause of action, prior to a cessation of their dealings.

Both these parties were private corporations under the laws of Texas, the charter of neither authorizing it to enter into a general partnership, such as the trial court must have thus had in mind in so ruling

that appellant's limitation pleas were ineffective.

■ Considering such origin and legal status, it would have been against the public policy of Texas to have permitted these concerns to enter into any partnership, whatever its kind; wherefore, it is concluded, neither fell within the class the Legislature was dealing with when it enacted such subsection 3 of article 5527. Sabine Tram Co. v. Bancroft, 16 Tex.Civ. App. 170, 40 S.W. 837, error refused; White v. Pecos Land & Water Co., 18 Tex. Civ.App. 634, 45 S.W. 207; Corralitos v. Mackay, 31 Tex.Civ.App. 316, 72 S.W. 624; Vineyard v. Miller Land Co., Tex.Civ.App., 209 S.W. 693; Burton-Lingo Co. v. Federal Glass, etc., Tex.Civ.App., 54 S.W.2d 170, 172; Millers' Indemnity Underwriters v. Patten, Tex.Civ.App., 238 S.W. 240; Humble Oil & Refining Co. v. Strauss, Tex.Civ. App., 243 S.W. 528.

■ Moreover, by another well-settled rule, the courts will not give contracts between litigating parties such a construction as renders them illegal, if they are reasonably susceptible of another that will leave them valid and enforceable. 10 Tex. Jur., Contracts, pars. 106 to 113, inclusive, also paragraph 181, and cited authorities under footnotes 1 to 8, inclusive.

Neither of the parties here contends that this contract, in whole or in part, is invalid or unenforceable—indeed, as already indicated, the appellee declares upon it in toto for its claims, and appellant, in turn, neither denies that it is bound by its terms, nor even asserts any of its contractual obligations thereunder to have been ultra vires as to it.

■■ It should not, therefore, be construed to constitute a partnership, it being at least susceptible of the view that it is valid and was so intended to be by its makers. Even were it held that a joint adventure resulted, still there would have been no partnership, since those two relationships are legally distinct, when applied to such facts as these. Subdivision 3, art. 5527; Gardner v. Wesner, Tex.Civ. App., 55 S.W.2d 1104; Munsey v. Mills, 115 Tex. 469, 283 S.W. 754; Ferguson v. Rhoades, Tex.Civ.App., 271 S.W. 155; Indiahoma Ref. Co. v. Wood, Tex.Civ.App., 255 S.W. 212; Adams v. Texahoma Oil & Ref. Co., Tex.Civ.App., 262 S.W. 139; Randall v. Meredith, 76 Tex. 669, 13 S.W. 576.

Appellant does say, however,—especially by so pleading the 4-year statute of limitation against the whole thereof—that if appellee had any cause of action against it under the mutually acknowledged written undertaking between them, which it denies entirely, that the greater part thereof at any rate accrued more than four years before appellee filed its suit thereon on the 13th day of November of 1940.

■ It is, therefore, thought that subdivision 3 of article 5527 in no way prevents appellant from so urging the 4-year statute of limitation against these claims, and that, since the charters of both corporations impliedly negatived their power to legally enter into the claimed partnership, the burden lay upon the appellee both to plead and to prove the contrary against the appellant, which it failed to do. Sabine Tram Co. v. Bancroft, 16 Tex. Civ.App. 170, 40 S.W. 837; White v. Pecos Land & Water Co., 18 Tex.Civ.App. 634, 45 S.W. 207.

■ Undoubtedly, it is thought, as the concluding sentence of the last-quoted paragraph from this contract plainly recites, appellee was given an immediate cause of action to recover from appellant the former's share of the net proceeds resulting from the production and sale of the minerals accrued at the time of each of such specified monthly accountings therefor; no reason is perceived, therefore, as to why the 4-year limitation prescribed by article 5527 did not begin to run from the time such right of action upon each partial accounting successively accrued; in other words, the money was made to be due when and as each of such statements was rendered, appellant was under express obligation to pay it at that time, and if it refused or neglected to do so, appellee could have then sued to recover thereon.

It may be that there is extant no reported case considering the application of such subdivision 3 of article 5527 to the legal equivalent of the facts here existing— that is, where a partial accounting at stated intervals is provided for in the contract, with further provision that the amount shown to be owing on such periodical accountings shall immediately become payable; indeed, the reported cases dealing with that statutory subdivision appear to be instances where there was plainly no obligation to pay on anything until after the transactions in their entirety between the parties ceased.

However that may be, under this distinctive contract, it is thought appellee's cause of action immediately accrued on appellant's refusal to pay all appellee claimed to be due at the time of such periodical accountings. Port Arthur Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926.

Under these conclusions, since the undisputed evidence seems to show that appellant did—with reasonable promptness—furnish appellee with what it tendered as the monthly statements provided for in their contract, all that portion of appellee's sued-upon claims which in fact accrued as much as four years prior to the filing of its suit—that is, those which became due prior to November 13 of 1936, or four years before the filing of the suit on November 13 of 1940—are barred by the statute of limitation.

The question, however, of what sued-for items were so barred, in whole or in part, is not readily susceptible of a determination—satisfactory to this court—from the record; since the trial court, under its holding that appellant's 4-year plea of limitation was inapplicable, excluded evidence it tendered as showing all the underlying facts.

While appellant urges "the claim for quantity discounts, the claim for over-assessment for disposing of salt water on the jointly owned leases, and the claim for one-half of the 2 per cent deducted by the pipe line company running the oil, as tank table strappage, during the year 1929, in their entirety, all accrued or became due and payable more than four years prior to the filing of appellee's suit; the greater portion of the other claims asserted by the appellee accrued, or became due and payable, more than four years prior to the filing of said suit", this court concludes that, in the absence of the evidence referred to, as well as of any findings of fact by the trial court touching the issue of limitation, the cause as a whole should be sent back there for another trial on that question only.

It will be so ordered.

Reversed and remanded, with instructions.

## On Motions for Rehearing

Both parties have filed motions for rehearing, appellant praying, "That that part of this court's judgment which reverses the judgment of the court below as a whole, and remands the cause, be set aside, and that judgment of this Court be reformed and amended, as follows", etc., while the appellee urges "that the Court of Civil Appeals affirm the judgment of the Trial Court, and in addition thereto, reform the same so as to include in its judgment the sum of $37,651.56, together with accrued interest thereon, being the amount of oil received by Appellant but not accounted for from January 1, 1930, to October 1, 1937; and that further, this cause be reversed and remanded as to the 'district expense', for the appointment of an auditor by the Trial Court to make an audit", etc.

Upon the reconsideration, however, this court is constrained not only to adhere to its former holding that the issue of limitation—permeating as it did every item sued upon by appellee—was controlling, so far as it reached upon what may have been the facts, and was erroneously held wholly inapplicable by the trial court, but also to decide no other question of substantive law, unless and until the appealed-from judgment is purged of the injurious effect of that error upon the rights of the parties; this for the reason that it clearly appears here that such error affects severable parts only of the matters in controversy between the parties, and is susceptible of a correction and elimination by further action thereon by the trial court.

In such circumstances, it seems to be the proper practice, under the concluding paragraph of Rule 434, Texas Rules of Civil Procedure, for the Court of Civil Appeals not to reverse the judgment of the court below as a whole, which was the effect of the order entered herein by this court on original hearing, but, instead, to hold the cause here in abeyance meanwhile, and to direct the court below to correct such error in a rehearing upon that issue only. That, indeed, was the objective of this court's former determination, which was, as indicated, inadvertently misstated.

Our appellate courts seem to have so construed that provision of cited Rule 434. Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929; Brown v. Neyland, Tex.Civ.App., 161 S.W.2d 833, modified 141 Tex. 253, 172 S.W.2d 89; Garcia v. Garza, Tex.Civ.App., 161 S.W.2d 297; Saladiner v. Palanco, Tex.Civ.App., 160 S.W.2d 537.

This Court's former judgment will accordingly be so modified, and the trial court will be directed to retry the issue of limitation as to all the claims appellee sued upon against appellant, hearing the pleadings and the evidence relating thereto, and determining as to each and all of them, both in whole and in part, what ones became due, or what parts thereof became due, prior to November 13, of 1936. It will be so ordered. Both motions are overruled.

Motions overruled.

## On Motion for Entry of Final Judgment

The appellee has moved this court "to enter a final judgment in conformity with per curiam opinion rendered by the Supreme Court in this cause on October 11, 1944." A copy of that opinion was certified to and filed in this court for observance, on October 30, 1944.

That court had theretofore granted the appellee's application for a writ of error against this court's judgment herein, of April 20, 1944, remanding the cause to the trial court for a retrial upon the issues of limitation therein involved only, holding the balance of the cause in abeyance meanwhile undisposed of upon its own docket. Thereafter, however, the Supreme Court concluded that it had first granted such application for writ of error "under a misunderstanding of the status of the case", and on such date of October 11, 1944, it withdrew that order, and dismissed the cause from its docket, in the opinion the appellee here invokes, the substance of which is this:

"While we have acquired no jurisdiction of the case and can enter no effective order therein, except an order dismissing the application for writ of error, still in view of the contentions urged here, and as further action in the case must be taken by the Court of Civil Appeals, we deem it not improper to point out that we do not agree with the construction given by that court to Rule 434. We construed that rule in Texas Employers Insurance Association v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929, 930, and pointed out that since it was but a bringing forward and readoption of old Rule 62a, it should be given the construction theretofore given to that rule. In that opinion we expressly held that Rule 434 did not authorize the Court to try "an indivisible cause of action by piecemeal."

■ The appellee's motion herein will be granted. While its terms disclose that the Supreme Court's quoted opinion did not hold the cause of action sued upon by the appellee herein against the appellant to be an indivisible one, except inferentially, this court regards that as its intended meaning, hence proceeds, as in conformity thereto, sets aside its former judgment of April 20, 1944, and now undertakes a decision of what it conceives to be the "indivisible cause of action" the Supreme Court so construed appellee's suit herein to embody.

The record discloses that it did comprehend a number of decidedly different elements, in that the appellee sued appellant herein on eight distinctly different claims, or asserted causes of action, arising out of widely different activities between the two litigating companies under the same general contract in writing, to-wit:

"No. 1—Profit on fresh water.
"No. 2—Profit on Breaxit and Lub oil.
"No. 3—Cash Discounts.
"No. 4—Volume-Purchase Discount.
"No. 5—Profit on trucks and tractors.
"No. 6—Over Assessment on salt water disposal.
"No. 7—Transporting second-hand material.
"No. 8—Tank Table Strappage Deductions."

Such being their nature and effect, it is thought any one of them may be finally disposed of by this court, independently of the others, since it does not understand the Supreme Court to mean that it cannot still affirm a cause in part and reverse it in part.

This court in its original opinion herein, filed March 1, 1944, held that all of such enumerated claims, in whole or in part, that were shown to have become due prior to November 13 of 1936, were barred by the four-year statute of limitation, under the construction it gave the terms of the contract between the parties. Without rediscussion of it here, that holding is adhered to and reiterated.

It is now further found and held:

■ (1) Under the information furnished in appellant's cited reply to the ap-

pellee's motion to enter final judgment, that all these portions of such claims were more than four years old on that date—November 13 of 1936—hence were so barred in their entirety by that statute, to-wit:

*3. Cash discounts received by the defendant on equipment and supplies purchased by it and used on the properties owned jointly by plaintiff and defendant and not credited to the Joint Account, in the principal sum of $9,263.12, together with interest accrued thereon in the sum of $6,152.87, said interest being calculated at the rate of six per cent (6%) per annum from the following dates to December 31, 1942, on the following amounts:

From January 1, 1931, on $8,402.17—$6,049.56 interest
From January 1, 1941, on     860.95—    103.31     "
                                                    "
Principal        $9,263.12—$6,152.87     "
                          Total, $15,415.99.

"4. Volume purchase discounts received by the defendant and allocable to materials and equipment purchased by it and used on properties owned jointly by plaintiff and defendant and not credited to the Joint Account, in the principal sum of $1,113.71, together with interest accrued thereon in the sum of $835.53, said interest being calculated at the rate of six per cent (6%) per annum from the following dates to December 31, 1942, on the following amounts:

From January 1, 1930, on $606.61—$473.16 interest.
From January 1, 1931, on   461.42—  332.22     "
From January 1, 1932, on    45.68—   30.15     "

          $1,113.71   $835.53
                    Total, $1949.24."

"6. Overassessment by the defendant, and charged to the plaintiff by reason of salt water disposal, in the principal sum of $6,419.68, together with interest accrued thereon in the sum of $4,622.17, said inter-

est being calculated at the rate of six per cent (6%) per annum from January 1, 1931, to December 31, 1942, totalling $11,041.85."

"8. Two per cent (2%) tank table strappage deduction from the time of the first production from the jointly-owned leases to December 31, 1929, in the principal sum of $25,198.52, together with $19,654.85 interest accrued thereon from January 1, 1930, to December 31, 1942, totaling $44,853.37."

The quoted numbers, items, and amounts, which aggregate the sum of $73,260.45, have been taken from the trial court's judgment, and follow the wording of its decree.

That judgment for the recited final sum of $127,827.30, in so far as it included this aggregate of $73,260.45, herein held to have been barred, is therefore reversed, and the cause as to these items and that accrued total thereof is here rendered in appellant's favor against the appellee.

(2) The appellant also contends that it likewise appears from this record and the evidence therein contained, that out of the remaining items and claims upon which the balance of the trial court's $127,827.30 judgment was rendered against it in favor of appellee, that these portions thereof, totalling $2,690.47, were not barred by limitation, as so ruled upon by this court, to-wit:

|  | Principal | Interest | Total |
|---|---|---|---|
| (1) Profit made by defendant on fresh water, | $ 842.74 | $101.13 | $ 943.87 |
| (2) Manufacturer's profit on Breaxit and lubricating oil, | 444.03 | 95.19 | 540.02 |
| (3) Profit on trucks and tractors, | 1,525.56 | 339.33 | 1,864.89 |
| (4) Transporting second hand materials, | 259.24 | 82.45 | 341.69 |
| Totalling, |  |  | $2,690.47. |

■ This court, however, is unable to agree with appellant that the evidence so shows, concluding, otherwise, that its condition is such that this court may not determine here what portions of such amounts were barred.

Wherefore, as to those items, the cause must be reversed and remanded to the trial court.

(3) Likewise, the appellee, by cross-assignments upon this appeal, sought a rendition in its favor here on two claims upon which judgment was rendered below in appellant's favor, namely, first, the claim involving "district expenses", and, second, the claim for the 2% deducted during the years of the operations involved, other than 1929, by the pipeline company running the oil; but, while this court's holding on appellant's pleas of limitation would likewise apply to them, there is no evidence in the record as to their resulting status, nor as to what part thereof would or would not be barred by the application of that ruling, since, as recited in our original opinion herein, "the trial court, under its holding that appellant's 4-year plea of limitation was inapplicable, excluded evidence it tendered as showing all the underlying facts."

These conclusions require that appellee's motion to enter final judgment herein be granted, as indicated supra, and that the trial court's judgment be in part reversed and rendered, and in part reversed and remanded, in accordance with this opinion. It will be so ordered.

Motion to enter final judgment granted, trial court's judgment reversed and rendered in part, and reversed and remanded in part.

On Motions for Rehearing

Both sides have filed respective motions for rehearing upon the judgment and opinion of this court entered herein on March 8, 1945.

They have been given careful consideration, with the result hereinafter indicated:

(1) After re-examination of the record and statement of facts, it is determined that the first three grounds of appellant's motion, as thus on immaterial features edited and condensed, are well taken and should be sustained, to-wit:

■ "I. The Court erred in reversing and remanding for a new trial the issue involving the Joe D. Hughes claim, which was found by the jury in favor of appellant, and concerning which no complaint is made in this appeal by appellee.

"II. The Court erred in reversing and remanding for a new trial all other separate claims, or issues, found by the trial court in favor of appellant, and of which no complaint is made on this appeal.

■ "III. The Court erred in reversing and remanding the judgment on the issue of 'district expenses', based on the jury's finding in appellant's favor, and complained of in appellee's Second Cross-Assignment of Error."

In other words, such re-examination has failed to disclose any lack of support for the recited findings of either the court or the jury in favor of the appellant upon any of the claims referred to in these quoted grounds, the first and third being those of the jury, and the second that of the court.

Appellee has made no complaint here against Nos. 1 and 2, but has presented its "second cross-assignment" against No. 3.

As further concerns the third of these claims, so involving such designated "district expenses", it had formerly been considered in so far only as it was affected by this court's ruling on the question of limitation; having now, however, been reviewed, as indicated, on whether the jury's finding for the appellant thereon was supported by the evidence, the conclusion is reached that it was, irrespective of the question of limitation.

(2) The effect of this holding necessarily is to overrule the appellee's "Second Cross-Assignment of Error" herein, which is accordingly done, inclusive of all that part of its motion for rehearing of March 22, 1945, which deals with and interposes that cross-assignment.

(3) Appellant's fourth and last ground in its present motion, which urges that the first cross-assignment of the appellee on this appeal, having to do with the latter's claim for 2% tank-table strappage deductions by the pipeline company running the oil for other years than 1929, should likewise be overruled without regard to the issue of limitation, on the asserted ground that appellant has already shown a good

**324**

defense to all of that claim regardless of the statute of limitation, is also sustained. In the first place, the question raised by appellee under such cross-assignment is practically the same as that involved in its stated second assignment, the only practical difference between them being that the issue it tendered in this first assignment was that of "Tank Table Strappage Deductions", while its second one, supra, related to "District Expenses". The trial court overruled this claim also, on the facts and the law, and it is concluded that the appellee has pointed out no reversible ground against that holding so adverse to it.

Without extending this opinion further, for clarity, the holdings made upon this rehearing may be thus summarized:

This court's judgment and opinion of March 8, 1945, granting the appellee's motion to enter a final judgment herein, in substance, are now so changed, amended, and reiterated, as to:

(1) Affirm the judgment of the court below, on all issues determined by it in appellant's favor, and of which no complaint has been made here by the appellee; (2) reiterate the holdings of March 8, 1945, numbered (1) and (2) on pages 3 and 4 of that opinion, respectively, adjudging $73,260.45 of the sued-upon claims barred by limitation and $2,690.47 thereof not shown to have been barred; (3) determine the issues presented by appellee's first and second cross-assignments of error adversely to it, and affirm the judgment of the court below thereon; (4) remand the cause to the trial court for another trial only upon the issues, or claims of, "(a) Profit made by the appellant on fresh water, (b) Manufacturer's profit on Breaxit and Lubricating Oil, (c) Profits on trucks and tractors, and (d) Transporting second-hand material."

That the appellee's motion No. 13245, except as otherwise herein recited, be overruled, especially as to its cross-assignments of error Nos. 1 and 2.

It will be so ordered.

Appellant's motion for rehearing granted in part and judgment ordered reformed accordingly.

Appellee's motion for rehearing refused.